**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| METROPOLITAN NEUROSURGERY ASSOC. on assignment of Naazish S.,<br><br>Plaintiff,<br><br>v.<br><br>AETNA LIFE INSURNACE COMPANY, DELOITTE, LLC.,<br><br>Defendant(s). | Civil Action No.: 2:22-cv-00083-JXN-MAH |

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

CALLAGY LAW, P.C.
Lori Shlionsky
650 From Road, Suite 240
Paramus, New Jersey 07652
Tel: (201) 261-1700
Fax: (201) 549-6236
Attorneys for Plaintiff, Metropolitan Neurosurgery Assoc.

*On the Brief:*

*Lori B. Shlionsky, Esq.*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT .......... 3

STANDARD OF REVIEW .......... 3

A. Fed. R. Civ. P. 12(b)(6) .......... 3

SUMMARY OF THE ARGUMENT .......... 4

LEGAL ARGUMENT .......... 5

*I. THE PLAINTIFF HAS PLEAD A COLORABLE CLAIM UNDER ERISA REIMBURSEMENT MANDATES THAT SHOULD SURIVE A MOTION TO DISMISS .......... 5*

*II. THE PLAINTIFF HAS SUFFICIENTLY PLEAD EXHAUSTION OF ADMINISTRATIVE REMEDIES TO SURVIVE A MOTION TO DISMISS .......... 8*

CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Cases**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 3, 4

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) .......... 4

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir.2008) .......... 3, 4

*Shah v. Horizon Blue Cross Blue Shield of New Jersey*, 2018 U.S. Dist. LEXIS at *6 (D.N.J. Feb. 9, 2018) .......... 7

*Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of New Jersey*, 2018 U.S. Dist. LEXIS at *7 (D.N.J. Mar. 6, 2018) .......... 7

**Rules**

29 U.S.C. §1104(a)(1)(A). .......... 7

29 C.F.R. § 2560-503-1 .......... 8

29 C.F.R. § 2560-503-1(b) .......... 8

29 CFR 2520.104b–1(c)(1)(i), .......... 8

Fed. R. Civ. P. 12(b)(6) .......... 3

## PRELIMINARY STATEMENT

Plaintiff, Metropolitan Neurosurgery Associates ("Plaintiff"), by and through their attorneys, Callagy Law, P.C., respectfully submits this Memorandum of Law in opposition to Defendants', Deloitte, Inc. d/b/a Aetna Life Insurance Company ("ALIC")("Defendant"), Motion to Dismiss ("Def. Mtn.") Plaintiff's First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6). This action arose from Defendants' failure to properly reimburse Plaintiff for the medically necessary and reasonable emergent services they provided to Naazish S. ("Patient") who duly assigned his benefits to Plaintiff. Since this underpayment/denial, Plaintiff has been trying to recover the reasonably amounts of monies it is owed under the Plan. Importantly, Plaintiff has appealed three (3) times pursuant to the terms of the Patient's Plan. At the time Plaintiff filed suit, Plaintiff had still not received any response from ALIC. As is set forth in this Opposition, Defendants' procedural hurdles have no merit and the time for the Court to review the merits of the Parties relative positions has come.

## STANDARD OF REVIEW

Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6). Def. Mtn.

### A. Fed. R. Civ. P. 12(b)(6)

When reviewing a 12(b)(6) motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008).

The Supreme Court further clarified the Rule 12(b)(6) standard noting that the factual allegations set forth in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations in the complaint

must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation." *Phillips*, 515 F.3d at 234-35

**SUMMARY OF THE ARGUMENT**

The Court must reject every single one of Defendants' arguments as they are unsupported by the law, facts, and equity.

In **Section I**, Plaintiff will establish that her claims were otherwise sufficiently plead to give rise to a colorable cause of action under ERISA benefit recovery that should survive a motion to dismiss. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In their Motion to Dismiss, the Defendant belies the weakness of their 12(b)(6) argument by merely restating guidance from several Courts and subsequently offering *zero* analysis as to why Plaintiff could be said to have plead in a manner "inconsistent with *Twombly* and *Iqbal*". Def. Mtn., p. 18. The reason for this is abundantly clear: the Defendant *knows* there is no plausible argument to be made. By way of its complaint, the Plaintiff has supplied this Court with a sufficiently plead cause of action accompanied by supporting documentation that rises well above the conclusory allegations this Court would, in other circumstances, appropriately avoid. *Twombly*, 550 U.S. 544, 555.

In **Section II,** Plaintiff will establish that it has exhausted the administrative remedies available to him at this time. In their Motion to Dismiss, the Defendant restates the standard for administrative appeal exhaustion and then, rather than address Plaintiff's *actual efforts in appeal* which he both referenced in his complaint and attached thereby. At law and equity, the timely efforts of the Plaintiff to seek relief through appropriate administrative channels are sufficiently

reflected by his Complaint and more than meet the liberal pleading standards to survive a motion to dismiss.

## LEGAL ARGUMENT

### I. THE PLAINTIFF HAS PLEAD A COLORABLE CLAIM UNDER ERISA REIMBURSEMENT MANDATES THAT SHOULD SURIVE A MOTION TO DISMISS

Defendant argues that Plaintiff has failed to plead facts upon which relief can be granted for the sole count of its complaint. Def. Mtn., p. 9. This is patently contradicted by a plain reading of the Complaint. See ECF. Doc. 3.

Plaintiff submitted Health Insurance Claim forms (HICF) for the services rendered. See Exhibit D. In response, Aetna sent an initial EOB requesting more information. See Exhibit E. Once, the information was received, Defendant submitted reimbursement to the Plaintiff on December 24, 2019. Although the FAC indicates that there are four (4) codes, there are actually five (5) codes at play, as the EOB for the subject emergency procedure was segmented into two (2) parts by Defendant. See FAC Exhibit F.

Nonetheless, the EOB provided the Plaintiff with direction as to the reimbursement policies on Defendant. The EOB stated that three (3) of the five (5) codes were reimbursed at the reasonable charge" level in the geographic area where the treatment was rendered. See FAC Exhibit F. Two of the codes were denied entirely. Id.

The reasonable charge was defined by the plan as:

> Only that part of a charge which is reasonable is covered. The reasonable charge for a service or supply is the lowest of:
> • The provider's usual charge for furnishing it
> • The charge the Claims Administrator determines to be appropriate, based on factors such as the cost of providing the same or a similar service or supply and the manner in which charges for the service or supply are made

> • The charge the Claims Administrator determines to be the prevailing charge level made for it in the geographic area where it is furnished.
>
> See SPD Page 114-115.

The plan also states that:

> In determining the reasonable charge for a service or supply that is: • Unusual • Not often provided in the area • Provided by only a small number of providers in the area The Claims Administrator may take into account factors, such as: • The complexity = The degree of skill needed • The type of specialty of the provider • The range of services or supplies provided by a facility • The prevailing charge in other areas
>
> See SPD Page 115.

Except for basic formatting, these are the exact terms quoted in the FAC. Frankly, Plaintiff is quite befuddled as to Defendant' contention that SPD language was "cherry-picked" in the FAC.

Even so, of the five CPT codes, three (3) were underpaid (22612, 63047 and 22840), 63047 was to be reduced to 50% for the multiple modality reduction, which is why Plaintiff indicated in its FAC that applicable reductions were applied, which reduced the amount calculated. Two of the codes (20936, 20930) were outright denied. See FAC Exhibit F.

As discussed *infra*, Defendant has been largely unresponsive to Plaintiff's appeals. Thus, the only reasoning Plaintiff has been provided as to the reimbursement method used by Defendant is the December 24, 2019, EOB and the definitions within the SPD. According to the SPD, there are possibly three methods that Defendant would use to make its determination. The Provider's usual charge (Plaintiff's interpretation thereof is billed charges) or the charge Defendant determines in its discretion to be either "appropriate" based on factors such as the cost of providing the same or a similar service and the manner in which charges for the service are made or the "prevailing" charge in the geographic area in which it is furnished. See SPD 114-115.

It is true the Plan provides Deloitte and ALIC, as the plan administrator/sponsor and claims administrator, the authority to exercise discretion over benefits administration and determine the level of reimbursement. Even so, with discretionary authority, ERISA plan administrators are required to act as fiduciaries to plan participants and beneficiaries. This means they must discharge their duties solely in the interest of plan participants and beneficiaries and for the exclusive purpose of providing them benefits. 29 U.S.C. §1104(a)(1)(A). They must place the financial interests of those participants and beneficiaries ahead of the insurer's or the employer's interest.

Unlike the caselaw referenced by Defendant, Plaintiff clearly has a colorable claim unmistakably tied to the terms of the SPD. Patient underwent emergency surgery conducted by the Plaintiff, MNA. See FAC Exhibit B. Plaintiff had health insurance during all material times provided by Deloitte, Inc. and administered by ALIC. See FAC Exhibit A. The Patient's Plan provides for reimbursement to out-of-network providers who provide emergency treatment. See Exhibit B and C. Reimbursement for such emergent care by out-of-network providers is paid in accordance with the "Reasonable Charge." See Exhibit D. The Reasonable charge is defined by the SPD. See SPD Page 114-115. The Reasonable Charge has been defined as either the "usual charge by the provider," or "prevailing rate" or the "usual charge" as determined by the Administrator.

Unlike the caselaw cited by Defendant, nowhere in the SPD does the Plan tie the Reasonable Charge to a Medicare based rate. See, e.g., *Shah v. Horizon Blue Cross Blue Shield of New Jersey*, 2018 U.S. Dist. LEXIS at *6 (D.N.J. Feb. 9, 2018); *Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of New Jersey*, 2018 U.S. Dist. LEXIS at *7 (D.N.J. Mar. 6, 2018). Based on the foregoing, Plaintiff respectfully asserts that he has plead a colorable claim under ERISA

and that should survive a Motion to Dismiss and Defendants' Motion should respectfully be denied.

## II. THE PLAINTIFF HAS SUFFICIENTLY PLEAD EXHAUSTION OF ADMINISTRATIVE REMEDIES TO SURVIVE A MOTION TO DISMISS

ERISA lays out various requirements which must be met with regard to the "filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations (hereinafter collectively referred to as claims procedures)." 29 C.F.R. § 2560-503-1(b). If reasonable claims procedures and not established and maintained, as defined in the applicable provisions of 29 C.F.R. § 2560-503-1, a "claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." *Id.*, at § 2560-503-1(l)(1).

When an adverse benefit determination is made, *i.e.*, when the submitted claim is not paid in full or outright denied, the notification of that benefit determination needs to comply with certain requirements. Those requirements are as follows:

(g) Manner and content of notification of benefit determination.

> (1) Except as provided in paragraph (g)(2) of this section, the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b–1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant—
>
> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;

> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

In an exercise as futile as it was evasive, the Defendant takes exceptional pains in its Motion to Dismiss to reiterate the standard for exhausting administrative appeals in the filing of ERISA claims. Specifically, Defendant erroneously argues that Plaintiff failed to follow the appeals process set forth in the Plan. To be clear, the adverse benefit determination itself runs afoul of the ERISA requirements outlined in 29 C.F.R. § 2560-503-1(b). See Exhibit F. Notably, the Explanation of Benefits (hereinafter "EOB") is devoid of "description of the plan's review procedures and the time limits applicable to such procedures . . ." Id.

Moreover, page 65 of 118 of the Plan describes how a member may appeal an adverse determination, stating that:

> You may file an appeal in writing to Aetna . . . your request should include the group name (that is, your employer), your name, member I.D., or other identifying information shown on the front of the Explanation of Benefits form, and any other comments documents, records and other information you would like to have considered, whether or not submitted in connection with the initial claim.
>
> See SPD page 63-65.

For some unknown reason, the Defendant suggests that the appeals sent on behalf of the Patient were merely "letters" and did not constitute administrative appeals or responses. To the contrary, on three (3) separate occasions our office sent written appeals, twice to Aetna and lastly to Deloitte, Inc. See FAC Exhibit G. The first of which was sent on January 30, 2020 and without

a doubt within the time constraints set forth in the SPD. Id. And although the letter advises of Callagy Law's representation it also complies with the above-mentioned appeal process. Id. It should be noted that at the time this initial appeal went out, Plaintiff was not in receipt of the SPD and as stated *supra*, Defendants' EOB failed to include the appropriate and necessary information regarding their appeal procures on time limitation,

Nonetheless, the initial January 30, 2020, appeal included the provider's name, the Patient's name, the date of service, the member I.D. and the claim number. See FAC Exhibit G. The appeal also included a brief statement indicating that MNA did not agree to the benefits determination and that the acceptance of payment thus far did not constitute acceptance of the amount included on the EOB. Id. Additionally, as referenced in the January 30, 2020, letter, a copy of the determination being appealed was attached thereto. See FAC Exhibit G. Thus, despite not having the SPD and the Defendants' EOB running afoul of the ERISA requirements set forth in 29 C.F.R. § 2560-503-1(b), the letter complied with the appeals process prescribed by the Plan. Notwithstanding, Aetna failed to respond to counsel's appeal.

On January 15, 2021, Plaintiff again appealed the adverse benefits determination. See FAC Exhibit G. This appeal also contained the requisite information as prescribed by the Plan.[1] In addition, the appeal included a statement indicating that MNA did not accept the amount allowed by Aetna and that same had been miscalculated pursuant to the terms of the Plan. See FAC Exhibit G. A calculation as to what Plaintiff believes they are entitled to pursuant to the terms of the Plan was also included. This second appeal also complies with the terms set forth in the Plan. Again, Counsel was not sent a response.

---

[1] The identifying information in the January 15, 202,1 letter is present at the top of the letter in Exhibit G. However, same has been redacted as it contains the Patient's confidential identifying information (i.e. name, i.d. number, provider name, tax i.d. etc.).

On July 28, 2021, Plaintiff again appealed the adverse benefits determination. See FAC Exhibit G. As two (2) appeals had been sent directly to Aetna and no response had been received, Plaintiff attempted to send this third appeal directly to the Plan/employer. This appeal also contained the requisite information as prescribed by the Plan.[2] As in the January 15, 2021, appeal, it included a statement indicating that MNA did not accept the amount allowed by Aetna and that same had been miscalculated pursuant to the terms of the Plan. See FAC Exhibit G. By November 22, 2021, Plaintiff had received no substantive response to the three (3) appeals set forth in accordance with the terms of the Plan, and thus, filed the instant action.

It is unclear why Defendant does not consider any of the three (3) appeals set forth on behalf of the Plaintiff as appeals. Pursuant to the terms of the Plan, all the appeals were in writing, and contained the requisite identifying information. See SPD Pages 63-65. All the appeals clearly stated that Plaintiff was in fact appealing the decision on the EOB. See FAC Exhibit G. Plaintiff filed their initial appeal within the time-constraints set forth in the SPD.

It appears that the sole contention as to why Defendant does not consider these appeals as "appeals," is because there was to be some second level response in order to trigger exhaustion. However, there was no response received on behalf of Plaintiff. Plaintiff appealed in accordance with the terms of the SPD. Defendants' failure to respond to Plaintiff's appeals should not bar Plaintiff's ability to bring an action. Thus, considering all facts provided in a light most favorable to the Plaintiff, Plaintiff contends that he has complied with the terms of the SPD in submitting their appeals and their unanswered attempts should be deemed administratively exhausted, as three (3) appeals have been submitted and the Plan requires two (2). See SPD Pages 63-65. Moreover,

[2] The identifying information in the January 15, 202,1 letter is present at the top of the letter in Exhibit G. However, same has been redacted as it contains the Patient's confidential identifying information (i.e. name, i.d. number, provider name, tax i.d. etc.).

Plaintiff should not be barred from bringing the instant action due to Defendants' failure to respond.

The Plaintiff has made more than a sufficient showing of administrative appellate exhaustion, plead accordingly, and the Defendants' self-serving conduct renders all further inquiry along those lines futile.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss must be denied.

Respectfully submitted,

Dated: Paramus, New Jersey
March 7, 2022

By: *__/s/ Lori B. Shlionsky__*
Lori B. Shlionsky, Esq.
Callagy Law, P.C.
650 From Road, Suite 240
Paramus, New Jersey 07652
Telephone: (201) 261-1700
Email: lshlionsky@callagylaw.com
*Attorneys for Plaintiff*