**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| METROPOLITAN NEUROSURGERY on assignment of Naazish S.,<br><br>Plaintiff,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY and DELOITTE LLP,<br><br>Defendants. | Civil Case No.: 2:22-cv-83 (JXN)(MAH)<br><br>**Oral Argument Requested Pursuant to L. Civ. R. 78.1(b)** |

# DEFENDANTS' BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND IN REPLY TO PLAINTIFF'S OPPOSITION

Michael E. Holzapfel, Esq. (Bar ID #031022002)
JACKSON LEWIS P.C.
766 Shrewsbury Avenue, Suite 101
Tinton Falls, New Jersey 07724
Telephone: (732) 532-6148
Fax: (732) 842-0301

ATTORNEYS FOR DEFENDANTS AETNA LIFE INSURANCE COMPANY AND DELOITTE LLP

## TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

LEGAL ARGUMENT ..... 2

POINT I

THE FAC FAILS TO PLEAD A VIABLE CLAIM FOR ADDITIONAL BENEFITS UNDER ERISA. ..... 2

POINT II

THE FAC FAILS TO PLEAD EXHAUSTION OF ADMINISTRATIVE REMEDIES. ..... 5

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*,
2018 U.S. Dist. LEXIS 47181 (D.N.J. Mar. 22, 2018)....11

*CardioNet, Inc. v. Cigna Health Corp.*,
751 F.3d 165 (3d Cir. 2014)....10

*Connor v. Sedgwick Claims Mgmt. Servs.*,
796 F. Supp. 2d 568 (D.N.J. 2011)....10

*Harrow v. Prudential Ins. Co. of Am.*,
279 F.3d 244 (3d Cir. 2002)....5

*Kao v. Aetna Life Ins. Co.*,
647 F. Supp. 2d 397 (D.N.J. 2009)....10

*Metro Life Ins. Co. v. Price*,
501 F.3d 271 (3d Cir. 2007)....5

*Miller v. Am. Airlines, Inc.*,
632 F.3d 837 (3d Cir. 2011)....9

*Mirza v. Ins. Adm'r of Am., Inc.*,
800 F.3d 129 (3d Cir. 2015)....10

*Neurological Surgery, P.C. v. Aetna Health, Inc.*,
511 F. Supp. 3d 267 (E.D.N.Y. 2021)....7

*Syed v. Hercules Inc.*,
214 F.3d 155 (3d Cir. 2000)....11

*Vicarisi v. Aetna Ins.*,
2020 U.S. Dist. LEXIS 132633 (D.N.J. July 27, 2020)....7

*Pa. ex rel. Zimmerman v. Pepsico, Inc.*,
836 F.2d 173 (3d Cir. 1988)....4

## Statutes

29 U.S.C. § 1132(a)(1)(B).... *passim*

29 U.S.C. § 1133(a)-(b)....8, 11

N.J.S.A. 26:2SS-8 and -9....6

**Regulations**


29 C.F.R. § 2560.503-1 ........ 8, 11

29 C.F.R. § 2560.503-1(b)(1) ........ 9

29 C.F.R. § 2560.503-1(b)(4) ........ 6

29 C.F.R. § 2560.503-1(g)(1)(i) ........ 8

29 C.F.R. § 2560.503-1(g)(1)(i) and (ii) ........ 9

29 C.F.R. § 2560.503-1(g)(1)(ii) ........ 8

29 C.F.R. § 2560.503-1(g)(1)(iii) ........ 9, 10

29 C.F.R. § 2560.503-1(g)(1)(iv) ........ 9, 10

29 C.F.R. § 2560.503-1(l)(1) ........ 9, 11

## PRELIMINARY STATEMENT

Defendants Aetna Life Insurance Company ("ALIC") and Deloitte LLP ("Deloitte") respectfully submit this brief in further support of their motion [D.E. 14] to dismiss Plaintiff Metropolitan Neurosurgery Association's ("MNA") First Amended Complaint ("FAC") [D.E. 11] for failure to state a claim, and in reply to Plaintiff's opposition ("Opposition") [D.E. 21].

The Opposition underscores why the arguments set forth in Defendants' opening brief ("Moving Brief") [D.E. 14-1] are correct. In order to plausibly plead a claim for benefits under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), a plaintiff must tie the benefits sought to a plan provision showing that those benefits are actually due. Contrary to this well-established rule of pleading, the FAC makes only general allegations that MNA submitted a bill for $138,192.00, received a payment of $4,068.74, and now demands an entirely unexplained amount of $117,547.26. Not only is this demand completely untethered to any term of patient Naazish S's ("Patient") Aetna Open Access Select EPO Plan ("Plan"), it is belied by the Plan's plain language. Rather than address this glaring hole in MNA's pleading, the Opposition focuses primarily on irrelevant issues, such as the medical necessity of the Patient's surgery and the contents of the memorializing Explanations of Benefits ("EOB"). None of this is germane to the pleading standard that applies to lawsuits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). That standard requires a plausible, factual connection between the plan's terms and the benefit sought. This connection is conspicuously lacking in the FAC.

Separately, both the FAC and the Opposition tacitly concede that neither the Patient nor anyone acting on her behalf ever engaged in, must less exhausted, the Plan's prescribed administrative appeals. The only thing ALIC and Deloitte ever received were legal threats with settlement demands from MNA's lawyers at Callagy Law, P.C. ("Callagy Firm"). The Callagy

Firm's "lawyer letters" are in no way "appeals" undertaken in accordance with the Plan's terms, and the Opposition barely pretends otherwise. The Opposition's only response is to flyspeck the EOB and ask the Court to treat the Callagy Firm's letters as though they *were* formal appeals. There is no support for this in ERISA's text or jurisprudence and the Court must dismiss the FAC.

## LEGAL ARGUMENT

## POINT I

## THE FAC FAILS TO PLEAD A VIABLE CLAIM FOR ADDITIONAL BENEFITS UNDER ERISA.

The well-established pleading standard in ERISA § 502(a)(1)(B) lawsuits for benefits holds that (1) only the terms of the plan itself can create an entitlement to benefits; and (2) if a complaint does not plausibly establish that the plan's terms require payment of the benefits sought, the remedy is dismissal. *Moving Brief*, p. 9-11 (collecting cases). MNA does not dispute this. Rather, it asserts that the FAC meets the pleading standard because the terms of the Plan entitle MNA to its "usual charge." *Opposition*, p. 6; *FAC*, Ex. E. This argument finds no support in either the FAC's minimal factual details or the Plan's text.

First, the FAC contains no facts to support an allegation that MNA "usually" bills $138,192.00 for this particular medical procedure when performed by Dr. Yao. Nor does the FAC contain any facts to support an allegation that Dr. Yao "usually" receives this amount from plans and insurers.

Second, the Plan does not, in fact, provide that the provider's "usual charge" automatically dictates the out-of-network benefit. As illustrated in the Moving Brief, the Plan states that it may pay a provider's "usual charge" *only* if it is *lower* than the amount which ALIC, in its discretion, determines to be either "appropriate" or "prevailing" in the geographic area in which it is furnished. And as the cases cited in the Moving Brief indicate, no legal authority compels plans to pay charge-based out-of-network benefits. Plans exercise discretion to peg benefits to indexes such as Medicare,

which does in fact take into account the geographic location in which services are provided. *See Moving Brief*, p. 12; *see also* Centers for Medicare and Medicaid Services, Overview of Medicare Physician Fee Schedule, *available at* https://www.cms.gov/medicare/physician-fee-schedule/search/overview (last visited March 9, 2022).[1]

Third, while the FAC intimates that the applicable out-of-network benefit should be charge-based, the pleading is inherently unclear as to what specific benefit MNA claims is "actually due." The Health Insurance Claim Form (i.e., the actual "bill") for Dr. Yao's services was $138,192.00. *FAC*, ¶ 18, Ex. E. The letters the Callagy Firm sent years later, however, stated that the "total owed" was $149,547.26. *Id.*, Ex. G (January 15, 2021 and July 28, 2021 letters). Different still, the FAC claims that the total due is only $117,547.26 "considering applicable pay rates and reductions," none of which the pleading explains. *Id.*, ¶ 22. Notably, this sum is different from the amount MNA demanded in its original Complaint, which was $134,123.26. *See* D.E. 1-1, ¶ 10.

But the confusion does not stop there. As confirmed by the EOBs, the Plan paid only three of the five CPT codes Dr. Yao billed, and the collective billed amount for those three codes was $129,701.00. *FAC*, Ex. F; *Moving Brief*, p. 4. However, the FAC also states that MNA takes issue with only *two* of the codes that were reimbursed (which would obviously impact the benefit sought), but does not identify *which* two. As for the two CPT codes for which ALIC denied reimbursement because the services (the autograft and allograft) were considered incidental to the

---

[1] MNA's argument that the Plan does not expressly state that out-of-network rates are pegged to Medicare misses the mark. *Opposition*, p. 7. Even if the reimbursement MNA received was Medicare-based, MNA still bears the pleading burden of establishing that the Patient has a vested right to the amount it seeks in the FAC, which is $138,192.00. This amount, MNA alleges, constitutes Dr. Yao's "usual" charge, and the Plan, MNA further alleges, mandates payment of nothing *less* than the out-of-network provider's "usual" charge. There is no factual support in the FAC or the Plan document for either allegation.

main surgical procedure, the FAC contains a passing allegation that MNA "disputes" this denial, but it contains zero information as to why. *FAC*, ¶¶ 26-27; *Moving Brief*, p. 13.

The Opposition makes a fainthearted attempt to shed some light on the matter by offering a concession (of sorts) that CPT code 63047, for which Dr. Yao billed $53,000.00, must be reduced by fifty percent for a "multiple modality reduction." *Opposition*, p. 4. Preliminarily, this allegation is not contained in the FAC or any of its attached exhibits, and MNA cannot amend its pleading through a brief in opposition to a motion to dismiss. *See Pa. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Even if the Court credits the allegation, however, it brings little clarity to the issue. If it is full billed charges that MNA seeks ($138,192.00), less a fifty percent reduction for CPT code 63047 ($26,500.00), then the Court and the Defendants are presented with yet another number: $111,692.00. Far from bringing the FAC's allegations closer to "plausibility," the Opposition only further muddies the waters.

Fourth, the Opposition's commentary about ALIC being "unresponsive" to MNA's purported "appeals" and a plan fiduciary's obligation to act in the interests of its participants and beneficiaries is beside the point. *Opposition*, p. 6-7. Even if, for example, ALIC was "unresponsive" to the Callagy Firm's letters, that has no bearing on the applicable pleading standard or whether the FAC satisfies it.

In sum, not only does the FAC fail to plausibly tie MNA's contention that an out-of-network provider's billed charge is the presumptively correct payment amount, the pleading is not even clear that MNA is in fact seeking Dr. Yao's billed charge. The FAC is all over the map as far as the quantum of the benefit sought, effectively inviting the Court to simply choose among the pleading's many options. That is not the law. In order to plead a plausible demand for benefits under ERISA § 502(a)(1)(B), a plaintiff must identify the actual benefit sought, and a plan term

that gives rise to an inference that the plaintiff has a vested right to that benefit. The FAC falls woefully short in this regard and the Court must dismiss it.

## POINT II

## THE FAC FAILS TO PLEAD EXHAUSTION OF ADMINISTRATIVE REMEDIES.

The Third Circuit has long held that "[e]xcept in limited circumstances…a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002). The exhaustion requirement is "a judicial innovation fashioned with an eye toward 'sound policy.'" *Metro Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007).

Consistent with this law, the Plan advises participants that "you are required to complete all appeal processes of the Plan before being able to obtain External Review or bring an action in litigation." *FAC*, Ex. C, p. 65. This process involves a mandatory, two-level internal appeal. *Id*. at p. 66.[2] A participant has 180 days following receipt of an adverse benefit determination to submit a first-level appeal to ALIC. *Id*. at p. 65. The Plan directs the participant to "submit written comments, documents, records, and other information relating to your claim, whether or not the comments, documents, records or other information were submitted in connection with initial claim." *Id.*, p. 65. If the participant is dissatisfied with an appeal decision, he may file a second-level appeal with ALIC within 60 days of the first-level decision. *Id.* at p. 66. If the participant is still unsatisfied, he may then bring an action under ERISA § 502(a). *Id.* According to these parameters, because the EOB summarizing the benefit determination for Dr. Yao's services was

[2] For certain types of appeals not pertinent to this case, the Plan allows for an optional, third appeal to an external review agency. *FAC*, Ex. C, p. 66-67.

issued on December 24, 2019 (*FAC*, Ex. F), the Patient (or her authorized representative) was required to commence the appeals process by filing a first-level appeal with ALIC by June 24, 2020.

The letters attached to the FAC as Exhibit G constitute what MNA considers to have been the Patient's "appeals" filed pursuant to the Plan. In fact, none of these letters are appeals. The earliest letter – while dated January 30, 2020, before the June 24, 2020 deadline – was not addressed to ALIC, or to anyone else for that matter. The Callagy Firm sent this correspondence "via email" to no discernable recipient, and addressed it "to whom it may concern." The Callagy Firm also did not send the letter on behalf on the Patient; it sent the letter as counsel *for MNA* for MNA's own benefit. Nowhere did the letter identify the Callagy Firm or MNA as the Plaintiff's designated authorized representative for purposes of an administrative appeal. *See* 29 C.F.R. § 2560.503-1(b)(4) (permitting an "authorized representative of a claimant" to act on the claimant's behalf "in pursuing a benefit claim or appeal of an adverse benefit determination"). On its face, the purpose of the letter was to exercise what MNA felt were *its* rights, not the Patient's rights, under the New Jersey Out-of-Network Consumer Protection, Transparency, Cost Containment and Accountability Act, N.J.S.A. 26:2SS-1 *et seq.* – a statute which, incidentally, does not apply to self-funded plans such as the Deloitte Plan in this context. *See* N.J.S.A. 26:2SS-8 and -9.

The January 30, 2020 letter, moreover, simply made a general, non-detailed statement that the reimbursement MNA received was too low. The letter did not allege that ALIC incorrectly calculated the payment, nor did it reference any Plan provisions that allegedly compelled a higher payment. The letter did not mention the two denied CPT codes, let alone offer any basis for why those two codes should not have been considered incidental to the primary procedure codes. The letter included no documentation, comments, or any other information which the Plan otherwise directs participants to submit in connection with an appeal. Indeed, the letter did not even identify

what MNA felt it *should* have been paid. It is nonsensical to characterize this letter as a first-level "appeal" as prescribed by the Plan.

As for the other two letters, which are dated almost two years after the December 2019 EOB, these are simply "lawyer letters" sent by the Callagy Firm to "Aetna" (in January 2021) and Deloitte (in July 2021). Both letters are marked "Confidential Settlement Communication Pursuant to Rule 408," and once again the Callagy Firm sent these letters on behalf of MNA, not the Patient. The purpose of both letters, moreover, was to broker purported "settlements" using threats of litigation. As with the initial letter, these letters do not constitute appeals taken pursuant to the Plan. To the contrary, these letters specifically exclude themselves from being *actual* appeals by stating "[d]espite our client's best efforts to resolve this matter though [*sic*] available administrative remedies, including appeals, our client remains underpaid." MNA unabashedly mischaracterizes the record in an unconvincing attempt to convince the court that MNA's settlement demands were administrative appeals filed *on behalf of the Patient*.

In an ERISA § 502(a)(1)(B) action for benefits, the plaintiff must plead with facts that he engaged in and exhausted the administrative appeals specifically prescribed by the plan.[3] *Vicarisi v. Aetna Ins.*, 2020 U.S. Dist. LEXIS 132633, at *4 (D.N.J. July 27, 2020); *see also Neurological Surgery, P.C. v. Aetna Health, Inc.*, 511 F. Supp. 3d 267, 293-295 (E.D.N.Y. 2021). Extraneous correspondence between a plan participant and an insurance company or administrator does not constitute an appeal taken in accordance with plan terms. *See id.* at 295 ("The law, however, is clear that correspondence between plaintiff and her insurer is insufficient to meet the clearly delineated process set forth within the ERISA plan."). Even under the most indulgent standard of review, the

---

[3] Alternatively, as explained in the Moving Brief, a plaintiff may make a "clear and positive showing" that exhaustion of administrative remedies would be "futile." *Moving Brief*, p. 16-17. The FAC does not allege futility, nor does the Opposition make this argument.

FAC comes nowhere close plausibly pleading that either the Patient or her authorized representative engaged in – much less exhausted – the administrative appeals.

Unable to refute the applicable law, MNA first makes a quasi-equitable argument that the FAC should be allowed to proceed because Plaintiff made "*efforts*" to appeal, and that these "efforts" should be considered sufficient as a matter of "law and equity." *Opposition*, p. 4. There is no support for this argument. The "law," set forth above and in the Moving Brief, is clear, and MNA plainly did not follow it. As for "equity," MNA cites no supporting authority (and Defendants are aware of none) for the proposition that a district court may relax or dispense with the exhaustion requirement if the court finds it "equitable" to do so under the circumstances.

MNA's only other argument is that the Court should deem the appeals exhausted under ERISA's claims regulation, 29 C.F.R. § 2560.503-1, because the December 24, 2019 EOB allegedly did not contain certain information required under that regulation. That is not the case.

ERISA § 503, 29 U.S.C. § 1133, provides that a plan must (1) provide "adequate notice in writing" to a participant whose claim has been denied, setting forth the specific reasons for the denial in a manner calculated to be understood by the participant; and (2) afford a "reasonable opportunity" for a "full and fair review" of the denial. 29 U.S.C. § 1133(a)-(b). 29 C.F.R. § 2560.503-1 is the regulation that implements ERISA § 503, and it sets forth a laundry list of items that adverse benefit determinations must contain, and establishes procedures and timelines for internal administrative appeals.

As relevant to MNA's argument, subsection (g) of the regulation provides that an adverse benefit determination must contain: (1) "the specific reason or reasons for the adverse determination," 29 C.F.R. § 2560.503-1(g)(1)(i); (2) a "reference to the specific plan provisions on which the determination is based," 29 C.F.R. § 2560.503-1(g)(1)(ii); (3) a "description of any

additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary," 29 C.F.R. § 2560.503-1(g)(1)(iii); and (4) a "description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review," 29 C.F.R. § 2560.503-1(g)(1)(iv). Later in the regulation, at subsection (l), the "deemed exhaustion" provision states:

> [I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.
>
> 29 C.F.R. § 2560.503-1(l)(1).

First and foremost, the December 24, 2019 EOB complied with the regulation. With respect to 29 C.F.R. § 2560.503-1(g)(1)(i) and (ii), the EOB clearly indicated that the Plan did not pay Dr. Yao's billed charge based on what the Plan defines as the "reasonable charge."

With respect to 29 C.F.R. § 2560.503-1(g)(1)(iii), the requirement that an adverse benefit determination contain a "description of any additional material or information necessary for the claimant to perfect the claim" is inapplicable to this case.[4] This subsection typically applies in the disability benefits forum where an administrator issues a termination letter denying benefits on grounds that the participant does not qualify as disabled. In such cases, the administrator must state what evidence the participant must submit to prove his disability (i.e., to "perfect the claim") and explain why this information is necessary. *See, e.g.*, *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 852

---

[4] The various subsections of the regulation apply only "*as appropriate*." 29 C.F.R. § 2560.503-1(b)(1) (emphasis added).

(3d Cir. 2011); *Connor v. Sedgwick Claims Mgmt. Servs.*, 796 F. Supp. 2d 568, 581 (D.N.J. 2011); *Kao v. Aetna Life Ins. Co.*, 647 F. Supp. 2d 397, 412 (D.N.J. 2009). This case does not fit that scenario, and Defendants are not aware of a case in which 29 C.F.R. § 2560.503-1(g)(1)(iii) has been applied in a provider reimbursement dispute such as this.

With respect to 29 C.F.R. § 2560.503-1(g)(1)(iv), this case does not present an instance in which Defendants argue that MNA failed to file a lawsuit within a plan's contractual limitations period. In such instances, failure to include the limitations period in the final adverse benefit determination has been held not to "substantially comply" with the regulation. *See Mirza v. Ins. Adm'r of Am., Inc.*, 800 F.3d 129, 136 (3d Cir. 2015). But that is not the situation here. MNA's suit is not barred because it failed to comply with any contractual limitations period; the suit is barred because MNA did not engage in and exhaust the plan's administrative appeals.

To the extent MNA's argument may be read to imply that the December 24, 2019 EOB should have set forth the 60-day window within which to file a first-level appeal, this argument is equally faulty. Preliminarily, "substantial compliance" with ERISA's notice requirements is all that is necessary under the law. *See Mirza*, 800 F.3d at 136 (3d Cir. 2015). Time periods for appeals are clearly set forth in the SPD. The Patient is presumed to have had knowledge of the Plan's administrative appeals requirements, and MNA, as the Patient's assignee, stands in the shoes of the Patient. *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 178 (3d Cir. 2014). It is disingenuous for MNA, who clearly had a copy of the SPD when it filed its purported "appeals" and filed suit, and who argues (albeit incorrectly) that it participated in the prescribed appeals process, to invoke the "deemed exhaustion" provision of the regulation based on the fact that the EOB did not specifically reference the 60-day window for an initial appeal.

Additionally, the "deemed exhaustion" provision of 29 C.F.R. § 2560.503-1 states that a plan's failure to establish or follow claims procedures consistent with the requirements of the regulation means that a claimant is entitled to pursue "any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that *would yield a decision on the merits of the claim*." 29 C.F.R. § 2560.503-1(l)(1) (emphasis added). MNA does not argue that Defendants' alleged regulatory violation deprived it or the Patient of a process that would have yielded a decision on the merits of the claim. Instead, MNA flyspecks the EOB with the objective of finding a *de minimis* technical violation in hopes that the Court will excuse MNA for its own failure to follow the appeals process prescribed by the Plan.

Finally, even if the Court could find some technical noncompliance with the regulation, under Third Circuit precedent the "remedy for a violation of § 503 is to remand to the plan administrator so the claimant gets the benefit of a full and fair review," rather than a substantive damages remedy. *Syed v. Hercules Inc.*, 214 F.3d 155, 162 (3d Cir. 2000), *accord Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, 2018 U.S. Dist. LEXIS 47181, at *41-42 (D.N.J. Mar. 22, 2018). Thus, even if MNA had an argument (and it does not) that Defendants did not substantially comply with the regulation such that MNA was deprived of a decision on the merits, the result is that the case must be remanded to ALIC for another review, not that the faulty FAC should be permitted to proceed.

**CONCLUSION**

For the foregoing reasons and those set forth in the Moving Brief, the Court should dismiss the FAC with prejudice.

JACKSON LEWIS P.C.

Attorneys for Defendants

By: /s/ *Michael E. Holzapfel*
Michael E. Holzapfel

Dated: March 14, 2022

4881-0795-5220, v. 1