**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| METROPOLITAN NEUROSURGERY ASSOCIATES ON ASSIGNMENT OF NAAZISH S.<br><br>Plaintiff,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY, AND DELOITTE LLP,<br><br>Defendant(s). | Civil Action No.: 2:22-cv-00083-JXN-MAH<br><br>**SECOND AMENDED COMPLAINT** |

Metropolitan Neurosurgery Associates ("MNA") on assignment of Naazish S. s' ("Patient" or "Principal") (collectively "Plaintiff") by way of Amended Complaint against Aetna Life Insurance Company, and Deloitte, LLP ("Defendant(s)"), asserts:

**NATURE OF THE ACTION, PARTIES,**
**JURISDICTION, AND VENUE**

1. This is an action arising under the laws of the United States, specifically the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., for Defendants' wrongful denial/underpayment of Patient's health insurance benefits.

2. Principal was, at all material times, a citizen and resident of New Jersey and is in all respects *sui juris*.

3. At all material times, MNA was a medical provider in the County of Bergen, State of New Jersey.

4. MNA on assignment of Patient's benefits brings this action on his behalf.

5. Upon information and belief, Defendant was present and engaged in significant activities in the State of New Jersey to sustain this Court's exercise of *in personam* jurisdiction.

6. This Court possesses original jurisdiction pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331.

7. Venue is proper in the District Court for the District of New Jersey as, *inter alia*, (a) all parties were residents/domiciled in New Jersey and/or conducted business in New Jersey, and (b) the breach of the terms of the subject employee welfare benefit plan took place in New Jersey, and (c) Defendant presently conducts and/or conducted business in New Jersey during the time at issue in this matter.

8. All conditions precedent to the institution of this action, *e.g.*, administrative appeals, have occurred, been performed, been exhausted, been waived, would be futile, or should otherwise be deemed exhausted pursuant to 29 C.F.R. § 2560.503-1.

**ANATOMY OF THE CLAIM**

9. Upon information and belief, at all material times Principal had health insurance through his employer, Deloitte, LLP.

10. At the time of the subject surgery, Principal's selected medical benefit option was the Aetna Open Access Select EPO, an ERISA governed plan funded by Deloitte, LLP with medical benefits administered by Aetna Life Insurance Company. See **Exhibit A** and **Exhibit B** at page 97.

11. Patient presented to the emergency department of Englewood Hospital and Medical Center on December 4, 2019, with severe exacerbation of symptoms due to failed non-surgical

treatment of long-standing severe low back pain and limited mobility with proximal radicular leg pain. See **Exhibit C**.

12. On December 4, 2019, Drs. Yao and assistant surgeon, Mark Arginteanu, medical providers with Metropolitan Neurosurgery Associates, provided medically necessary and reasonable services to Patient. Id.

13. Patient underwent an emergency laminectomy, removal of disk herniation, and intraoperative fluoroscopy with physician interpretation on December 14, 2019. Id.

14. Specifically, Patient had emergency spine surgery that included a lumbar laminectomy at L1-L2, diskectomy for removal of disc herniation, and placement of posterior instrumentation, pedicle screws and rods at L1-L2 for fusion, lumbar posterolateral fusion with allograft and autograft bone at L1-L2, intraoperative fluoroscopy with physician interpretation, and other related procedures. Id.

15. These services met the definition of "Emergency" or "Emergency Medical Condition" as defined in the Summary Plan Description ("SPD") as the Patient was in such a condition that absent immediate medical attention a prudent layperson could reasonably expect that his health would be placed in serious jeopardy, there was or could be impairing to bodily functions, and there was or could be serious dysfunctions of a bodily organ or part. See **Exhibit B** at page 23.

16. At the time of the subject surgical procedure, MNA was not participating in the network of providers associated with the benefits provided by the plan. See **Exhibit D**.

17. The subject emergency spine surgery performed by the Out-of-Network provider MNA qualifies as a covered medical procedure pursuant to the terms of the SPD. See **Exhibit B**. (Pages 15, 23, 40 of SPD).

18. The bill for this service, submitted to Defendant by way of health insurance claim forms ("HICFs"), was $138,192.00. See **Exhibit E**.

19. On December 17, 2019, Defendant submitted an Explanation of Benefits ("EOB") to MNA, requesting more information to determine if the patient's emergency surgical procedure was eligible for coverage. See, **Exhibit D**.

20. Upon information and belief, MNA submitted the requested information to Defendants.

21. On December 24, 2019, Defendants allowed reimbursement for these emergency services rendered by MNA in the total amount of $4,068.74. See **Exhibit F**.

22. This represents an underpayment of approximately $117,547.26, considering applicable pay rates and reductions.

23. Per the explanation code on the December 24, 2019, EOB, "the member's plan provides benefits for covered expenses at the "Reasonable Charge' in the geographical area where the service is provided." Id.

24. The Plan's SPD defines "Reasonable Charge" as:

> Only the part of the charge which is reasonable is covered. The reasonable charge for a service or supply is the lowest of:
> - The provider's usual charge for furnishing it.
> - The charge the claims administrator determines to be appropriate, based on factors such as the cost providing the same or similar service or supply and the manner in which the charges for the service or supply are made.
> - The charge the Claims administrator determines to be the prevailing charge level made for it in the geographic area where it is furnished.

25. The Plan's SPD defines the "Reasonable Charge"—for out-of-network providers performing emergency services such as Drs. Yao and Arginteanu—as the lesser of "the provider's usual charge," "the charge the Claims Administrator determines to be appropriate, based on factors

such as the cost of providing the same or similar service or supply and the manner in which charges for the service or supply are made," or "the charge the Claims Administrator determines to be the prevailing charge level made for it in the geographic area where it is furnished." See **Exhibit B** (pages 114-115).

26. The SPD further states that the claims administrator may take into account five (5) distinct factors when determining the "Reasonable Charge" for a service that is deemed unusual, not so often provided in the area, or provided in only a small number of providers in the area, which include: "complexity," "degree of skill needed," "type of specialty of the provider," "range of services or supplies provided by a facility," and "prevailing charge in other areas." Id.

27. The amount in dispute in this matter concerns the appropriate amount of reimbursement for out-of-network emergency services for the three (3) codes that were reimbursed, but underpaid, as well as the two (2) codes that have been denied entirely. See **Exhibit F**.

28. Plaintiff disputes the calculation Defendant used to establish the allowed reimbursement for the three (3) codes that were permitted reimbursement and the denial of the remaining (2) codes.

29. Plaintiff billed $53,861.00 for CPT code 22612 for the subject surgery, which has been reimbursed $2,231.11 by Defendant. See **Exhibits E and F**.

30. The EOB states that the CPT was paid at the reasonable charge for the service in the geographical area it was provided and in "certain circumstances especially where the service was unusual or not provided in the geographical area, the reasonable charge may be determined by considering other factors, including the prevailing charge in other areas." See **Exhibit B.**

31. Defendant paid $2,231.11 for CPT 22612, which fails to fall into any of the three categories delineated in the SPD; (1) $2,231.11 is not the provider's usual charge, which is $53,861.00 for this service (See exemplar EOB(s) attached hereto as **Exhibit I**); (2) $2,231.11 is not the prevailing charge for CPT 22612 made for the geographic area where the service was furnished, which is anywhere between $53,861.00 and $90,999.00 (50th percentile to 95th percentile) for the geozip in question, see attached Fee Schedule taken from the nation's largest collection of private healthcare claims data, which includes a repository of over 42 million privately billed procedures across all 50 states as **Exhibit J**; (3) $2.231.11 is not close to the prevailing charge in other areas, which is anywhere between $45,179.41 and $99,900.00 (50th percentile to 95th percentile) for Central New Jersey and anywhere between $10,999.98 and $42,432.00 (50th percentile to 95th percentile) for southern New Jersey, see attached Fee Schedule(s) taken from the nation's largest collection of private healthcare claims data, which includes a repository of over 42 million privately billed procedures across all 50 states as **Exhibit K**.

32. In the claims administrator's analysis, they should consider the complexity of the surgery, the degree of skill required and the type of specialty of the provider. Here, the surgery was a complex spinal surgery provided by Dr. Kevin Yao, MD, a board-certified neurological surgeon, he is the chief of neurosurgery at Englewood Hospital, completing his education at Columbia University's College of Physicians and Surgeons and residency at Mount Sinai medical center, the complexity of the surgery, the specialty of the surgeon and skill required for this surgery is of the highest caliber. See **Exhibit L**.

33. Based on the Plan's SPD, Defendant breached the terms of the Plan when failing to reimburse CPT 22612 at the rate outlined in its very terms, woefully and arbitrarily underpaying CPT 22612 at $2,231.11. See **Exhibit B** (pages 114-115).

34. Plaintiff billed $53,000.00 for CPT code 63047 for the subject surgery, which has been reimbursed $2,231.11 by Defendant. See **Exhibits E and F**.

35. The EOB states that the CPT was paid at the reasonable charge for the service in the geographical area it was provided and in "certain circumstances especially where the service was unusual or not provided in the geographical area, the reasonable charge may be determined by considering other factors, including the prevailing charge in other areas." See Id.

36. Defendant paid $776.15 for CPT 63047, which fails to fall into any of the three categories delineated in the SPD; (1) $776.15 is not the provider's usual charge, which is $53,000.00 for this service (See exemplar EOB(s) attached hereto as **Exhibit M**); (2) $776.15 is not the prevailing charge for CPT 63047 made for the geographic area where the service was furnished, which is anywhere between $53,000.03 and $93,500.00 (50th percentile to 95th percentile) for the geozip in question, see attached Fee Schedule taken from the nation's largest collection of private healthcare claims data, which includes a repository of over 42 million privately billed procedures across all 50 states as **Exhibit J**; (3) $776.15 is not close to the prevailing charge in other areas, which is anywhere between $17,357.96 and $69,768.00 (50th percentile to 95th percentile) for Central New Jersey and anywhere between $7,173.99 and $31,999.00 (50th percentile to 95th percentile) for southern New Jersey, see attached Fee Schedule(s) taken from the nation's largest collection of private healthcare claims data, which includes a repository of over 42 million privately billed procedures across all 50 states as **Exhibit K**.

37. In the claims administrator's analysis, they should have considered the complexity of the surgery, the degree of skill required and the type of specialty of the provider. Here, the surgery was a complex spinal surgery provided by Dr. Kevin Yao, MD, a board-certified neurological surgeon, the chief of neurosurgery at Englewood Hospital, completing his education at Columbia University's College of Physicians and Surgeons and residency at Mount Sinai medical center, the complexity of the surgery, the specialty of the surgeon and skill required for this surgery is of the highest caliber. See **Exhibit L**.

38. Based on the Plan's SPD, Defendant breached the terms of the Plan when failing to reimburse CPT 63047 at the rate outlined in its very terms, woefully and arbitrarily underpaying CPT 63047 at $776.15. See **Exhibit B** (pages 114-115).

39. Plaintiff billed $26,115.00 for CPT code 22840 for the subject surgery, which has been reimbursed $1,061.48 by Defendant. See **Exhibits E and F**.

40. The EOB states that the CPT was paid at the reasonable charge for the service in the geographical area it was provided and in "certain circumstances especially where the service was unusual or not provided in the geographical area, the reasonable charge may be determined by considering other factors, including the prevailing charge in other areas." See Id.

41. Defendant paid $1,061.48 for CPT 22840, which fails to fall into any of the three categories delineated in the SPD; (1) $1,061.48 is not the provider's usual charge, which is $26,115.00 for this service (See exemplar EOB(s) attached hereto as **Exhibit N**); (2) $1,061.48 is not the prevailing charge for CPT 22840 made for the geographic area where the service was furnished, which is anywhere between $27,421.01 and $47,699.00 (50th percentile to 95th percentile) for the geozip in question, see attached Fee Schedule taken from the nation's largest collection of private healthcare claims data, which includes a repository of over 42 million

privately billed procedures across all 50 states as **Exhibit J**; (3) $1,061.48 is not close to the prevailing charge in other areas, which is anywhere between $25,098.74 and $55,497.00 (50th percentile to 95th percentile) for Central New Jersey and anywhere between $6,206.01 and $20,966.00 (50th percentile to 95th percentile) for southern New Jersey, see attached Fee Schedule(s) taken from the nation's largest collection of private healthcare claims data, which includes a repository of over 42 million privately billed procedures across all 50 states as **Exhibit K**.

42. In the claims administrator's analysis, they should have considered the complexity of the surgery, the degree of skill required and the type of specialty of the provider. Here, the surgery was a complex spinal surgery provided by Dr. Kevin Yao, MD, a board-certified neurological surgeon, the chief of neurosurgery at Englewood Hospital, completing his education at Columbia University's College of Physicians and Surgeons and residency at Mount Sinai medical center, the complexity of the surgery, the specialty of the surgeon and skill required for this surgery is of the highest caliber. See **Exhibit L**.

43. Based on the Plan's SPD, Defendant breached the terms of the Plan when failing to reimburse CPT 63047 at the rate outlined in its very terms, woefully and arbitrarily underpaying CPT 63047 at $1,061.48. See **Exhibit B** (pages 114-115).

44. CPT 20936 was billed at $2,916.00 and was denied by Defendant in its entirety; in its denial Defendant stated that the reason for the denial was that the service was incidental to other services provided to the patient.

45. According to the National Correct Coding edits, there is no relationship between the five (5) codes billed (20936, 20930, 63047, 22612 and 22840) that would prevent separate billing for these codes and therefore, the denial is unsubstantiated. See **Exhibit O**.

46. Pursuant to the terms of the SPD, CPT 20936 should be reimbursed pursuant to the Reasonable Charge as defined in paragraph 25, which should be the lesser of: (1) $2,916.00; (2) $3,500.00; and (3) $1,824.00 and $2,736.00, which would amount to $1,824.00. See **Exhibits P and K**.

47. PT 20930 was billed at $2,300.00 and was denied by Defendant in its entirety; in its denial Defendant stated that the reason for the denial was that the service was incidental to other services provided to the patient.

48. According to the National Correct Coding edits, there is no relationship between the five (5) codes billed (20936, 20930, 63047, 22612 and 22840) that would prevent separate billing for these codes and therefore, the denial is unsubstantiated. See **Exhibit O**.

49. Pursuant to the terms of the SPD, CPT 20930 should be reimbursed pursuant to the Reasonable Charge as defined in paragraph 25, which should be the lesser of: (1) $2,300.00; (2) $5,819.00; and (3) $1,362.00 and $1,932.00, which would amount to $1,362.00. See **Exhibits Q and K**.

50. MNA appealed Defendant's determination on multiple occasions, all of which largely went without response. See **Exhibit G**.

51. MNA, proceeding on an Assignment of Benefits from Patient, brought suit. See **Exhibit H**.

52. Accordingly, Plaintiff brings this action for the recovery of the balance of benefits due to Principal under the Plan for the emergency treatment rendered to him by the providers within MNA.

## COUNT I

## RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(a)(1)(B)

53. Plaintiff repeats and restates the allegations in the preceding paragraphs of the Complaint as if fully set forth at length herein.

54. ERISA § 502(a)(1), codified at 29 U.S.C. § 1132(a)(1)(B), provides a cause of action for a beneficiary or participant seeking benefits due payment under the terms of an ERISA governed plan.

55. Defendants both substantially underpaid by failing to properly calculate the Reasonable Charge pursuant to the terms of the Plan and denied benefits due to Principal under the terms of the Plan for the reasons set forth above.

56. Specifically, Defendant failed to both remit any payment whatsoever and adhere to the terms of the Plan by significantly underpaying for medically necessary emergency treatment, and appropriately exhausting the administrative remedies.

**WHEREFORE**, Plaintiff requests the entry of judgment against Defendant as follows:

a. For damages including, but not limited to, past-due contractual benefits as set forth in the Plan;

b. For attorney's fees and costs of suit; and

For such other and further relief as the Court may deem just, equitable, and/or proper.

**[Signature block continued on next page.]**

Dated: Paramus, New Jersey
September 22, 2023

Respectfully submitted,

**CALLAGY LAW, P.C.**
Mack Cali Centre II
650 From Road – Suite 565
Paramus, New Jersey 07652
Phone: (201) 261-1700
Fax: (201) 549-6244

By: ______________________
Lori B. Shlionsky, Esq.
lshlionsky@callagylaw.com