**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

METROPOLITAN NEUROSURGERY ASSOC. on assignment of Naazish S.,

Plaintiff,

v.

AETNA LIFE INSURNACE COMPANY, and DELOITTE, LLC.,

Defendant(s).

Civil Action No.: 2:22-cv-00083-JXN-MAH

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

CALLAGY LAW, P.C.
Lori Shlionsky
650 From Road, Suite 240
Paramus, New Jersey 07652
Tel: (201) 261-1700
Fax: (201) 549-6236
Attorneys for Plaintiff, Metropolitan Neurosurgery Assoc.

*On the Brief:*

*Lori B. Shlionsky, Esq.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................ 3

STANDARD OF REVIEW ........................................ 4

A. Fed. R. Civ. P. 12(b)(6) ........................................ 4

LEGAL ARGUMENT ........................................ 4

*I. MNA PLAUSIBLY ALLEGES THAT NAAZISH S. IS ENTITLED TO BENEFITS UNDER THE PLAN ........................................ 4*

*II. THE PLAINTIFF HAS SUFFICIENTLY PLEAD EXHAUSTION OF ADMINISTRATIVE REMEDIES TO SURVIVE A MOTION TO DISMISS .......... 10*

CONCLUSION ........................................ 17

# TABLE OF AUTHORITIES

**Cases**

*Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 173 (3d Cir. 2015) 10, 16

*Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.,* 2018 U.S. Dist. LEXIS 186320 ........................................ 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................ 4

*Deblasio v. Cent. Metals, Inc*., 2014 U.S. Dist. LEXIS 87666, at *10 (D.N.J. June 27, 2014).... 16

*Grossmuller v. Int'l Union, UAW, Local 813*, 715 F.2d 853, 856-58 (3d Cir. 1983)............... 11

*Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002) ................................ 10

*Hill v. Prudential Ins. Co. of Am.*, Civil Action No. 89-0277, 1989 U.S. Dist. LEXIS 13839, at *3-4 (E.D. Pa. Nov. 14, 1989) .......... 11

*Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 594-95 (2d Cir. 1993) .......... 10

*Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir. 2007) .......... 10

*Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 106 (2d Cir. 2005) .......... 11

*Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 445 (2d Cir. 2006) .......... 11

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir.2008) .......... 4

*Rando v. Standard Ins. Co.*, Civil Action No. 96-1153, 1998 U.S. Dist. LEXIS 6612, at *3 (D. Kan. May 1, 1998) .......... 11

*Shah v. Horizon Blue Cross Blue Shield of New Jersey*, 2018 U.S. Dist. LEXIS at *6 (D.N.J. Feb. 9, 2018) .......... 9

*Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of New Jersey*, 2018 U.S. Dist. LEXIS at *7 (D.N.J. Mar. 6, 2018) .......... 9

**Statutes**

29 C.F.R. § 2560-503-1 .......... 12

29 C.F.R. § 2560-503-1(b) .......... 12, 13, 14

29 C.F.R. § 2560.503-1(f)(4) .......... 11

29 C.F.R. § 2560.503-1(l) .......... 11

29 C.F.R. § 2560.503.1(g)(1)(i)-(v) .......... 12

29 U.S.C. §1104(a)(1)(A) .......... 8

ERISA § 502(a)(1)(B) .......... 5, 6

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 4

## PRELIMINARY STATEMENT

This is a straightforward claim for benefits under ERISA involving one provider, one date of service, one beneficiary and one insurer. Determining what benefits are due under the terms of Naazish S.'s ERISA governed plan (the "Plan") does not involve deciphering complex reimbursement methodologies or navigating sophisticated medical necessity judgement. Instead, Plaintiff simply seeks to recover benefits due for emergency medical services performed by Metropolitan Neurosurgery Associates. Aetna's opposition offers no substantive response as to why said benefits are not due to Naazish S. In the absence of a valid substantive argument, Aetna dives deep into the legal weeds challenging, standing under ERISA, Article III standing, and exhaustion of remedies.

Aetna challenges the plausibility of Naazish S. being entitled to benefits under the Plan by offering one sentence, which claims that the pleading does not identify a Plan term that entitles Naazish S. to the benefits sought. To the extent this "argument" requires a response, Aetna entirely denied an emergency services claim for benefits. The pleading thoroughly details the direct Plan provisions that govern this instance and clearly alleges how Aetna's denial of coverage was contrary to these terms. If this pleading is not an example of pleading entitlement to benefits under the Plan, nothing is.

Finally, on a motion to dismiss, Aetna alleges Plaintiff failed to exhaust internal remedies under the Plan. Aetna makes this argument with a straight face, despite producing a two authorized, timely, appeals submitted to Aetna, by MNA, in accordance with the Plan's appeals process. On a motion to dismiss, where the burden to demonstrate failure to exhaust administrative remedies weighs entirely on the Defendant, this argument is

beneath serious consideration.

As such, Aetna's motion should be denied, and this simple matter should be resolved shortly after. Clearly, Aetna is in possession of the administrative record, as it has already reviewed a good portion of it in opposing the Complaint. If Aetna has any legitimate basis in deny this claim, said basis lies in the administrative record, not Aetna's opposition.

## STANDARD OF REVIEW

Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6). Def. Mtn.

### A. Fed. R. Civ. P. 12(b)(6)

When reviewing a 12(b)(6) motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008).

The Supreme Court further clarified the Rule 12(b)(6) standard noting that the factual allegations set forth in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations in the complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation." *Phillips*, 515 F.3d at 234-35

## LEGAL ARGUMENT

### I. MNA PLAUSIBLY ALLEGES THAT NAAZISH S. IS ENTITLED TO BENEFITS UNDER THE PLAN

Defendant argues that Plaintiff has failed to plead facts upon which relief can be granted for the sole count of its complaint. Def. Mtn., p. 9. This is patently contradicted by a plain reading of the Complaint. See ECF. Doc. 3.

Aetna cites generic case law involving Third Circuit Courts stating that beneficiaries are only entitled to benefits under the terms of the Plan. Aetna MTD at 19-20. In one sentence, Aetna argues that MNA fails to state a claim under ERISA § 502(a)(1)(B): "Even assuming this allegation as true for purposes of this motion, nothing in the Plan document requires ALIC to pay Plaintiff's billed charge, and courts in this District (again, including this Court) routinely dismiss such allegations." *Id.* at 19. Aetna provides no additional reasoning as to why this claim should be dismissed.

It is well established that to state a claim under § 502(a)(1)(B), a beneficiary of the plan must demonstrate that benefits are actually due to them under the terms of the plan. *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.,* 2018 U.S. Dist. LEXIS 186320, at *20. To demonstrate that benefits are due, plaintiffs must identify which terms of the Plan were violated by the plan fiduciaries. *Id.* Contrary to Aetna's contention, the Complaint thoroughly identifies exactly which Plan provisions entitle Naazish S. to benefits. The relevant Plan provisions at issue here are clearly identified in the Complaint under the subheading "The Plan's Terms." *See* Cmplt. ¶¶ 16-20.

The Complaint details the emergency surgery provided to Naazish S. Cmplt. ¶ 21. Further, the Complaint explains the painstaking process that MNA and Naazish S. engaged in to properly bill and subsequently appeal Aetna's benefits denial. Cmplt. ¶¶ 30-38. This process included submitting a claim, multiple appeals, and multiple follow ups. *Id.* Despite these efforts, Aetna still failed to properly reimburse the claim. Cmplt. ¶ 32. Considering this context, the Complaint cites the Plan's ONET emergency services pay structure and the Plan's definition of an "Emergency medical condition." Cmplt. ¶¶ 18-19. The Complaint then prices the claim at $117,547.26. Cmplt. ¶¶ 30, 32. The Complaint describes

this dollar amount as an "Outstanding Balance." *Id.* After detailing the billing and appeals history, the Complaint explains how Aetna improperly reimbursed the claim in clear violation of the Plan's terms. *Id.* Considering all this, the pleading alleges; "Aetna violated its duties under the Plan, namely the Plan provisions surrounding emergency procedures." This allegation then references the Plan terms. It is obvious, and well-plead, that the benefit sought is the $117,547.26 owed to Naazish S. for the emergency services provided by MNA as per the clear language of the Plan's coverage for treatment of an "Emergency medical condition" performed by out-of-network providers.

Nowhere in Aetna's opposition does it dispute that it improperly reimbursed the benefits submitted by MNA. Being that Aetna does not suggest that the claim was properly reimbursed, it effectively concedes that it has violated it out-of-network emergency services provision. However, the Complaint does not require such a concession to plausibly plead a claim for benefits as it (a) cites a direct Plan provision relevant to the services provided (b) expressly states what amount that Plan provision should have paid, and (c) clearly alleges that Aetna's denial of benefits was done in contrary to this Plan term. If this pleading is not an example of pleading entitlement to benefits under the Plan, nothing is. Accordingly, Dr. MNA has demonstrated which terms of the Plan entitle Naazish S. to additional benefits and has plausibly alleged a claim under ERISA § 502(a)(1)(B).

Plaintiff submitted Health Insurance Claim forms (HICF) for the services rendered. See Exhibit D. In response, Aetna sent an initial EOB requesting more information. See Exhibit E. Once, the information was received, Defendant submitted reimbursement to the Plaintiff on December 24, 2019. Although the FAC indicates that there are four (4) codes, there are actually five (5) codes at play, as the EOB for the subject emergency procedure was segmented into two

(2) parts by Defendant. See Exhibit F. Nonetheless, the EOB provided the Plaintiff with direction as to the reimbursement policies on Defendant. The EOB stated that three (3) of the five (5) codes were reimbursed at the reasonable charge" level in the geographic area where the treatment was rendered. See Exhibit F. Two of the codes were denied entirely. Id.

The **reasonable charge** was defined by the plan as:

> Only that part of a charge which is reasonable is covered. The reasonable charge for a service or supply is the lowest of:
> • The provider's **usual charge** for furnishing it
> • The charge the Claims Administrator determines to be appropriate, based on factors such as the cost of providing the same or a similar service or supply and the manner in which charges for the service or supply are made
> • The charge the Claims Administrator determines to be the **prevailing charge** level made for it in the geographic area where it is furnished.
>
> See SPD Page 114-115.

The plan also states that:

> In determining the reasonable charge for a service or supply that is: • Unusual • Not often provided in the area • Provided by only a small number of providers in the area The Claims Administrator may take into account factors, such as: • The complexity The degree of skill needed • The type of specialty of the provider • The range of services or supplies provided by a facility • The prevailing charge in other areas
>
> See SPD Page 115.

Except for basic formatting, these are the exact terms quoted in the FAC. Frankly, Plaintiff is quite befuddled as to Defendant' contention that SPD language was "cherry-picked" in the FAC.

Even so, of the five CPT codes, three (3) were underpaid (22612, 63047 and 22840), 63047 was to be reduced to 50% for the multiple modality reduction, which is why Plaintiff indicated in its FAC that applicable reductions were applied, which reduced the amount calculated. Two of the codes (20936, 20930) were outright denied.

As discussed *infra*, Defendant has been largely unresponsive to Plaintiff's appeals. Thus, the only reasoning Plaintiff has been provided as to the reimbursement method used by Defendant is the December 24, 2019, EOB and the definitions within the SPD. According to the SPD, there are possibly three methods that Defendant would use to make its determination. The Provider's usual charge (Plaintiff's interpretation thereof is billed charges) or the charge Defendant determines in its discretion to be either "appropriate" based on factors such as the cost of providing the same or a similar service and the manner in which charges for the service are made or the "prevailing" charge in the geographic area in which it is furnished. See SPD 114-115.

It is true the Plan provides Deloitte and ALIC, as the plan administrator/sponsor and claims administrator, the authority to exercise discretion over benefits administration and determine the level of reimbursement. Even so, with discretionary authority, ERISA plan administrators are required to act as fiduciaries to plan participants and beneficiaries. This means they must discharge their duties solely in the interest of plan participants and beneficiaries and for the exclusive purpose of providing them benefits. 29 U.S.C. §1104(a)(1)(A). They must place the financial interests of those participants and beneficiaries ahead of the insurer's or the employer's interest.

Unlike the caselaw referenced by Defendant, Plaintiff clearly has a colorable claim unmistakably tied to the terms of the SPD. Patient underwent emergency surgery conducted by the Plaintiff, MNA. See ECF 3. Plaintiff had health insurance during all material times provided by Deloitte, Inc. and administered by ALIC. Id. The Patient's Plan provides for reimbursement to out-of-network providers who provide emergency treatment. Id. Reimbursement for such emergent care by out-of-network providers is paid in accordance with the "Reasonable Charge." See Exhibit D. The Reasonable Charge is defined by the SPD. See SPD Page 114-115. The

Reasonable Charge has been defined as either the "usual charge by the provider," or "prevailing rate" or the "usual charge" as determined by the Administrator.

Unlike the caselaw cited by Defendant, nowhere in the SPD does the Plan tie the Reasonable Charge to a Medicare based rate. See, e.g., *Shah v. Horizon Blue Cross Blue Shield of New Jersey*, 2018 U.S. Dist. LEXIS at *6 (D.N.J. Feb. 9, 2018); *Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of New Jersey*, 2018 U.S. Dist. LEXIS at *7 (D.N.J. Mar. 6, 2018). Importantly, Defendant is again asserting that the SAC fails to demonstrate "Reasonable Charge" obligates the Plan to pay the benefits Plaintiff demands. Plaintiff is frankly befuddled by this assertion. Plaintiff has added content which demonstrates what each CPT code should have been reimbursed pursuant to the "Reasonable Charge." Aetna's own website states:

> **Reasonable Charge:** A limit on the amount of your health plan pay. Also called usual, customary and reasonable (UCR), **customary and reasonable**, or **prevailing charge**. The limit is based on data Aetna receives. The date is based on what doctors charge (emphasis added) for the health care service. We receive the data from **Fair Health**, an independent organization. Check your plan documents for more details: Your health plan documents will tell you how we pay for out-of-network care. Or call Member Services at the phone number listed on your Aetna ID card. See https://www.aetna.com/glossary.html ("Reasonable Charge").

The data attached to Plaintiff's SAC is derived from the Fair Health Data. See **Exhibit A.** There is no question that Plaintiff has tied the Reasonable Charge to its assertion of what the Plan should have paid. Moreover, the "reasonable charge" as defined in the SPD is defined as usual charge and prevailing charge, all of which are derived from Fair Health Data as defined by Aetna's website above.

Plaintiff has systemically tied the Reasonable Charge to its demand CPT code by CPT code. Based on the foregoing, Plaintiff respectfully asserts that he has plead a colorable claim

under ERISA and that should survive a Motion to Dismiss and Defendants' Motion should respectfully be Denied.

## II. THE PLAINTIFF HAS SUFFICIENTLY PLEAD EXHAUSTION OF ADMINISTRATIVE REMEDIES TO SURVIVE A MOTION TO DISMISS

In its motion to dismiss, Aetna proposes a factual allegation that MNA failed to exhaust administrative remedies under the Plan, and as such, the claim must be dismissed as the Court is lacking jurisdiction. Aetna MTD at 20 (citing *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002)). According to Aetna, the result of exploration of the alleged administrative record is that "Plaintiff did not exhaust the administrative appeals process prescribed by the Plan," and as such, the "the Court must dismiss the Complaint." Aetna MTD at 22.

What Aetna fails to mention is the threshold legal standard surrounding pleading exhaustion of remedies in an ERISA claim for benefits. "The ERISA exhaustion requirement is an affirmative defense, so the defendant[s] bear[] the burden of proving failure to exhaust." *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 173 (3d Cir. 2015). Aetna's burden does not shift to the plaintiff at the pleadings stage. *Id.* Unless the plaintiff's failure to adequately pursue their administrative remedies can be "conclusively established" from the complaint, the plaintiff's claim remains viable. *Id.* Further, "Where claimants make a 'clear and positive showing' that pursuing available administrative remedies would be futile . . . a court will release a claimant from the requirement." *Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 594-95 (2d Cir. 1993) (internal citations omitted).

Said another way, administrative exhaustion is a non-jurisdictional affirmative defense in the Third Circuit. *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir. 2007). Exhaustion is not

mandatory; and the decision to review a case is subject to a balancing of interests with “"waiver, estoppel, tolling[,] or futility” on the Plaintiff's side. *Id.* at 279; *see also Paese v. Hartford Life & Accident Ins. Co., 44*9 F.3d 435, 445 (2d Cir. 2006) ("[ERISA exhaustion] is purely a judge-made concept that developed in the absence of statutory language demonstrating that Congress intended to make [it] a jurisdictional requirement.").

Further, in the event that an appellant is denied a meaningful opportunity to appeal, administrative remedies are deemed exhausted. 29 C.F.R. § 2560.503-1(l) (providing that where a plan fails to establish or follow ERISA-compliant claims procedures, “a claimant shall be deemed to have exhausted the administrative remedies available under the plan[1]”). The ERISA claims procedure regulation specifies the steps necessary to give “full and fair review” whenever a plan makes an “adverse benefit determination.” These steps require the giving of specific notice and appeal rights, including giving “[t]he specific reason or reasons for the adverse determination,” “[r]eference to the specific plan provisions on which the determination is based,” a description of additional materials or information necessary to perfect the claim, “[a] description of the plan's review procedures and the time limits applicable to such procedures,” including notification that the claimant has a right to bring a civil action under ERISA to

[1] *See, e.g., Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 106 (2d Cir. 2005) (holding that a plan administrator's failure to adhere literally to the ERISA claims procedure regulation renders the claimant's administrative remedies exhausted by operation of law and consequently permits the claimant to seek review in the federal courts without further delay); *Grossmuller v. Int'l Union, UAW, Local 813*, 715 F.2d 853, 856-58 (3d Cir. 1983) (concluding that an administrator's failure to provide full and fair review removes the exhaustion requirement); *Rando v. Standard Ins. Co.*, Civil Action No. 96-1153, 1998 U.S. Dist. LEXIS 6612, at *3 (D. Kan. May 1, 1998)(“There is an exception to the exhaustion requirement where the plan does not provide meaningful access to administrative procedures.”); *Hill v. Prudential Ins. Co. of Am.*, Civil Action No. 89-0277, 1989 U.S. Dist. LEXIS 13839, at *3-4 (E.D. Pa. Nov. 14, 1989) (“29 C.F.R. § 2560.503-1(f)(4) requires that a claim denial contain, among other things, appropriate information on an appeals process. If this information were not present, as the plaintiffs aver, then there might be no problem with the exhaustion of remedies.”).

challenge the decision, and making available, free of charge, copies of any "internal rule, guideline, protocol, or similar criterion [that] was relied upon in making the adverse determination." 29 C.F.R. § 2560.503.1(g)(1)(i)-(v).

So, the initial inquiry in determining if MNA has met the ERISA exhaustion requirement, is does the pleading establish exhaustion. *Id.* ERISA lays out various requirements which must be met with regard to the "filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations (hereinafter collectively referred to as claims procedures)." 29 C.F.R. § 2560-503-1(b). If reasonable claims procedures and not established and maintained, as defined in the applicable provisions of 29 C.F.R. § 2560-503-1, a "claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." *Id.*, at § 2560-503-1(l)(1).

When an adverse benefit determination is made, *i.e.*, when the submitted claim is not paid in full or outright denied, the notification of that benefit determination needs to comply with certain requirements. Those requirements are as follows:

(g) Manner and content of notification of benefit determination.

> (1) Except as provided in paragraph (g)(2) of this section, the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b–1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant—
>
> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;

> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

In an exercise as futile as it was evasive, the Defendant takes exceptional pains in its Motion to Dismiss to reiterate the standard for exhausting administrative appeals in the filing of ERISA claims. Specifically, Defendant erroneously argues that Plaintiff failed to follow the appeals process set forth in the Plan. To be clear, the adverse benefit determination itself runs afoul of the ERISA requirements outlined in 29 C.F.R. § 2560-503-1(b). See Exhibit F. Notably, the Explanation of Benefits (hereinafter "EOB") is devoid of "description of the plan's review procedures and the time limits applicable to such procedures . . ." Id.

Moreover, page 65 of 118 of the Plan describes how a member may appeal an adverse determination, stating that:

> You may file an appeal in writing to Aetna . . . your request should include the group name (that is, your employer), your name, member I.D., or other identifying information shown on the front of the Explanation of Benefits form, and any other comments documents, records and other information you would like to have considered, whether or not submitted in connection with the initial claim.
>
> See SPD page 63-65.

For some unknown reason, the Defendant suggests that the appeals sent on behalf of the Patient were merely "letters" and did not constitute administrative appeals or responses. To the contrary, on three (3) separate occasions our office sent written appeals, twice to Aetna and lastly to Deloitte, Inc. See Exhibit G. The first of which was sent on January 30, 2020 and without a

doubt within the time constraints set forth in the SPD. Id. And although the letter advises of Callagy Law's representation it also complies with the above-mentioned appeal process. Id. It should be noted that at the time this initial appeal went out, Plaintiff was not in receipt of the SPD and as stated *supra*, Defendant's EOB failed to include the appropriate and necessary information regarding their appeal procures on time limitation,

Nonetheless, the initial January 30, 2020, appeal included the provider's name, the Patient's name, the date of service, the member I.D. and the claim number. See Exhibit G. The appeal also included a brief statement indicating that MNA did not agree to the benefits determination and that the acceptance of payment thus far did not constitute acceptance of the amount included on the EOB. Id. Additionally, as referenced in the January 30, 2020, letter, a copy of the determination being appealed was attached thereto. See Exhibit G. Thus, despite not having the SPD and the Defendant's EOB running afoul of the ERISA requirements set forth in 29 C.F.R. § 2560-503-1(b), the letter complied with the appeals process prescribed by the Plan. Notwithstanding, Aetna failed to respond to counsel's appeal.

On January 15, 2021, Plaintiff again appealed the adverse benefits determination. See Exhibit G. This appeal also contained the requisite information as prescribed by the Plan.[2] In addition, the appeal included a statement indicating that MNA did not accept the amount allowed by Aetna and that same had been miscalculated pursuant to the terms of the Plan. See Exhibit G. A calculation as to what Plaintiff believes they are entitled to pursuant to the terms of the Plan was also included. This second appeal also complies with the terms set forth in the Plan. Again, Counsel was not sent a response.

---

[2] The identifying information in the January 15, 2021 letter is present at the top of the letter in Exhibit G. However, same has been redacted as it contains the Patient's confidential identifying information (i.e. name, i.d. number, provider name, tax i.d. etc.).

On July 28, 2021, Plaintiff again appealed the adverse benefits determination. As two (2) appeals had been sent directly to Aetna and no response had been received, Plaintiff attempted to send this third appeal directly to the Plan/employer. This appeal also contained the requisite information as prescribed by the Plan.[3] As in the January 15, 2021, appeal, it included a statement indicating that MNA did not accept the amount allowed by Aetna and that same had been miscalculated pursuant to the terms of the Plan. See Exhibit G. By November 22, 2021, Plaintiff had received no substantive response to the three (3) appeals set forth in accordance with the terms of the Plan, and thus, filed the instant action.

It is unclear why Defendant does not consider any of the three (3) appeals set forth on behalf of the Plaintiff as appeals. Pursuant to the terms of the Plan, all the appeals were in writing, and contained the requisite identifying information. All the appeals clearly stated that Plaintiff was in fact appealing the decision on the EOB. Plaintiff filed their initial appeal within the time-constraints set forth in the SPD.

It appears that the sole contention as to why Defendant does not consider these appeals as "appeals," is because there was to be some second level response in order to trigger exhaustion. However, there was no response received on behalf of Plaintiff. Plaintiff appealed in accordance with the terms of the SPD. Defendant's failure to respond to Plaintiff's appeals should not bar Plaintiff's ability to bring an action. Thus, considering all facts provided in a light most favorable to the Plaintiff, Plaintiff contends that he has complied with the terms of the SPD in submitting their appeals and their unanswered attempts should be deemed administratively exhausted, as three

---

[3] The identifying information in the January 15, 202,1 letter is present at the top of the letter in Exhibit G. However, same has been redacted as it contains the Patient's confidential identifying information (i.e. name, i.d. number, provider name, tax i.d. etc.).

(3) appeals have been submitted and the Plan requires two (2). Moreover, Plaintiff should not be barred from bringing the instant action due to Defendant's failure to respond.

Accordingly, all administrative remedies are either exhausted or futile. Id. Based on this clear pleading of exhaustion administrative remedies, Aetna maintains the burden of establishing conclusively establishing that MNA failed to pursue administrative remedies. *Am. Chiropractic Ass'n*, 625 F. App'x 173.

This argument need not go any further, as Aetna has fallen dramatically short of meeting its burden to conclusively establish that MNA failed to exhaust administrative remedies. At best, this is a poorly presented dispute of material fact. Which, on a motion to dismiss, is legally ineffective. If Aetna's motion accomplishes anything, it illustrates that MNA's attempts to exhaust the internal appeals process were in fact futile from the start. Aetna brazenly attempts to weaponizes its failure to follow ERISA regulations as an excuse that MNA failed to exhaust the internal appeals process. Needless to say, this attempt fails.

The pleading clearly explains MNA, through counsel, submitted a timely appeal. Cmplt. ¶ 33. Considering this, if there was any remaining doubt that MNA has not plausibly established exhaustion of, or futility regarding, the internal appeals process, it has surely been extinguished. Since the Aetna bears the burden of proving MNA's failure to exhaust, a complaint cannot be dismissed without, at least, limited discovery. See *Deblasio v. Cent. Metals, Inc*., 2014 U.S. Dist. LEXIS 87666, at *10 (D.N.J. June 27, 2014) (holding a claim dismissal inappropriate when based on defendant's allegation that plaintiff failed to exhaust administrative remedies). All the more reason that Aetna's motion should be denied, and this matter should proceed to discovery.

The Plaintiff has made more than a sufficient showing of administrative appellate exhaustion, plead accordingly, and the Defendant's self-serving conduct renders all further inquiry along those lines futile.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss must be denied.

Respectfully submitted,

Dated: Paramus, New Jersey
January 16, 2024

By: */s/ Lori B. Shlionsky*
Lori B. Shlionsky, Esq.
Callagy Law, P.C.
650 From Road, Suite 240
Paramus, New Jersey 07652
Telephone: (201) 261-1700
Email: lshlionsky@callagylaw.com
*Attorneys for Plaintiff*