UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| METROPOLITAN NEUROSURGERY *on assignment of Naazish S.*, <br><br> Plaintiff, <br><br> v. <br><br> AETNA LIFE INSURANCE COMPANY and DELOITTE LLP, <br><br> Defendants. | Civil Action No. 22-00083 (JXN)(MAH) <br><br> **OPINION** |

**NEALS**, District Judge

This matter comes before the Court on Defendants Aetna Life Insurance Company ("Aetna") and Deloitte LLP's ("Deloitte") (collectively "Defendants") motion to dismiss Plaintiff Metropolitan Neurosurgery Associates ("MNA") on assignment of Naazish S.'s (collectively "Plaintiff") Second Amended Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 35.) Plaintiff opposed the motion (ECF No. 36), and Defendants replied in further support (ECF No. 37). Jurisdiction is proper pursuant to 29 U.S.C. § 1132. Venue is proper pursuant to 28 U.S.C. § 1391. The Court has considered the parties' submissions and decides this motion on the papers pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1. For the reasons below, Defendants' motion to dismiss is **GRANTED.**

I. **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Naazish S. ("Patient") was admitted to the emergency department at Englewood Hospital and Medical Center on December 4, 2019, "with severe exacerbation of symptoms due to failed non-surgical treatment of long-standing severe low back pain and limited mobility with proximal radicular leg pain." (Second Amended Complaint ("SAC") ¶ 11, ECF No. 27.) On that date, Dr. Kevin Yao ("Dr. Yao") and assistant surgeon Dr. Mark Arginteanu ("Dr. Arginteanu"), medical providers with MNA, performed an emergency spinal laminectomy, disc herniation removal, and fluoroscopy on the Patient, with physician interpretation on December 14, 2019. (SAC ¶¶ 13, 14; Ex. C.) At the time of the surgery, Patient was enrolled in the "Aetna Open Access Select EPO Plan" (the "Plan"), an Employee Retirement Income Security Act ("ERISA") governed plan funded by Deloitte, with medical benefits administered by Aetna. (SAC ¶ 10.) When Patient underwent the emergency surgical procedure, MNA was not participating in the network of providers associated with the benefits provided by the Plan. (SAC ¶ 16.) Plaintiff alleges that the subject emergency spine surgery performed on Patient by Out-of-Network provider MNA "met the definition of 'Emergency' or 'Emergency Medical Condition as defined in the Summary Plan Description ("SPD") and thus qualifies as a covered medical procedure. (SAC ¶¶ 16, 17; *id.*, Ex. B at 15, 23, 40.) The Plan's SPD defines the "Reasonable Charge"—for out-of-network providers performing emergency services such as Drs. Yao and Arginteanu—as the lesser of "the provider's usual charge," "the charge the Claims Administrator determines to be appropriate, based on factors such as the cost of providing the same or similar service or supply and the manner in which charges for the service or supply are made," or "the charge the Claims Administrator determines to be the

---

[1] When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The Court may also consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

prevailing charge level made for it in the geographic area where it is furnished." (SAC ¶ 25; *id.*, Ex. B at 114-115.)

MNA submitted Health Insurance Claim Forms ("HICFs") to Aetna for Dr. Yao's services in the amount of $138,192.00. (SAC ¶ 18; *id.*, Ex. E.) In response, Aetna sent an initial Explanation of Benefits ("EOB") to MNA on December 17, 2019, requesting more information to determine if Patient's emergency surgical procedure was eligible for coverage. (SAC ¶ 19; *id.*, Ex. D.) On December 24, 2019, Defendants reimbursed MNA in the amount of $4,068.7 for three of the five Current Procedural Terminology ("CPT") codes for the emergency services rendered to Patient. (*See* SAC ¶ 21; *id.*, Ex. F.) Plaintiff asserts that the reimbursement issued to MNA "represents an underpayment of approximately $117,547.26, considering applicable pay rates and reductions." (SAC ¶ 22.) Specifically, Plaintiff claims Defendants underpaid CPT codes 22612, 63047, and 22840 based on the Plan's definition of "Reasonable Charge." (SAC, ¶¶ 24, 31, 36, 41.) Plaintiff further alleges that Defendants wrongfully denied reimbursement on codes 20936 (autograft) and 20930 (allograft) on the grounds that such procedures are not considered incidental to the main procedure. (SAC ¶¶ 44, 45, 47, 48.)

Plaintiff claims it "appealed Defendant[s'] determination on multiple occasions, all of which largely went without response." (SAC ¶ 50; *id.*, Ex. G.) The appeals, according to Plaintiff, include: (1) a letter dated January 30, 2020, sent by MNA's counsel, Callagy Law, P.C. ("Callagy"), advising that MNA did not accept the payment accompanying the EOB dated December 24, 2019, as full and final payment for the claim and invoking counsel's right to negotiate a settlement for "appropriate compensation" for the services provided to Patient (s*ee* SAC, Ex. G at 2-3); (2) a "Confidential Settlement Communication" letter dated January 15, 2021, sent by Callagy to Aetna asserting MNA's objection to "the Allowed Amount" for the claim,

3

offering a settlement of $134,592.53 and stating that "[d]espite [MNA's] best efforts to resolve this matter through available administrative remedies, including appeals, [MNA] remains underpaid." (*Id*. at 6-7); and (3) a similar letter dated July 28, 2021, from Callagy to Deloitte conveying the same offer. (*See id*. at 4-5).

On November 22, 2021, MNA, proceeding on an assignment of benefits from Patient, filed a lawsuit in the Superior Court of New Jersey, Law Division, Bergen County, asserting four state law claims against Aetna, Inc., and Deloitte. (ECF No. 1-1.) In the complaint, Plaintiff alleged the Plan "underpaid" MNA in the amount of $134,123.26 for services rendered. (*Id*. at ¶ 10.)

On January 7, 2022, Defendants removed to this Court based on federal question jurisdiction under 28 U.S.C. § 1331. (*See* Notice of Removal ¶¶ 19-27, ECF No. 1.)

On January 14, 2022, Defendants moved to dismiss the Complaint. (ECF No. 7.) In lieu of opposing the motion, Plaintiff filed an Amended Complaint. (*See* Am. Compl., ECF No. 11.)

On February 17, 2022, Defendants moved to dismiss the Amended Complaint. (ECF No. 14.) Plaintiff opposed the motion (ECF No. 21), and Defendants replied in further support (ECF No. 22). The Court granted Defendants' motion in an Opinion and Order dated August 16, 2023 (ECF Nos. 23, 24.) The Court found that the FAC failed to state a plausible claim for benefits under ERISA § 502(a)(1)(B) and granted Plaintiff leave to file an amended pleading. In its Opinion, the Court also acknowledged Defendants' exhaustion of administrative remedies argument, although it did not address the merits given its conclusion that the Amended Complaint failed to state a claim for benefits. Instead, the Court held that Defendants could renew the exhaustion argument in response to any amended pleading.

On September 22, 2023, Plaintiff filed the SAC. (ECF No. 27.) In the SAC, Plaintiff asserted a single claim for Recovery of Benefits under Section 502(a)(1)(B) of ERISA, codified at 29 U.S.C. § 1132(a)(1)(B), (Count I). (SAC ¶¶ 53-56.)

On January 29, 2024, Defendants filed the instant motion to dismiss Plaintiff's SAC pursuant to Rule 12(b)(6). (ECF No. 35.) Plaintiff opposed the motion (ECF No. 36), and Defendants replied in further support (ECF No. 37). The motion is now ripe for the Court to decide.

## II. **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under this rule, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citations omitted). A court must only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In evaluating a plaintiff's claims, the Court considers the allegations in the complaint, as well as the documents attached thereto and specifically relied upon or incorporated therein. *See Sentinel Tr. Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or

5

explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.") (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)) (internal quotation marks omitted)).

### III.  ANALYSIS

Defendants argue that the SAC should be dismissed because (1) Plaintiff still fails to connect the Plan's terms to the benefits sought and (2) the SAC does not plausibly plead that Plaintiff exhausted administrative remedies or that one of the exceptions to exhaustion apply. (*See generally*, ECF No. 35.) The Court addresses these arguments below.

#### A.  Exhaustion of Administrative Remedies

Defendants argue that the SAC fails to plead facts showing that Plaintiff exhausted the Plan's prescribed administrative appeals process or that one of the exceptions to exhaustion applies. (ECF No. 35-1 at 15-19.) Plaintiff counters that it engaged in and exhausted the administrative appeals prescribed by the plan. (ECF No. 36 at 10-16.)

ERISA does not specifically require that a participant or beneficiary exhaust a plan's internal review procedures before a lawsuit can be filed. *Rizzo v. First Reliance Standard Life Ins. Co.*, 417 F. Supp. 3d 479, 485–86 (D.N.J. 2019), *aff'd*, No. 20-1144, 2022 WL 17729430 (3d Cir. Dec. 16, 2022) (citing *Amato v. Bernard*, 618 F.2d 559, 566 (9th Cir. 1980)).  Due to ERISA's provision for the administrative review of benefit claim denials, however, courts have read an exhaustion of administrative remedies requirement into the statute. *See Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990) (collecting cases). The exhaustion requirement is "strictly enforced." *Id.* at 916. Since exhaustion of remedies is considered an affirmative defense, "the defendant bears the burden of proving failure to exhaust." *Am. Chiropractic Ass'n v. Am. Specialty Health, Inc.*, 625 F. App'x 169, 173 (3d Cir. 2015) (citing *Metro. Life Ins. Co. v. Price*, 501 F.3d

271, 280 (3d Cir. 2007)). The defendant's burden does not shift to the plaintiff at the pleadings stage. *Am. Chiropractic Ass'n.*, 625 F. App'x at 173. Unless the plaintiff's failure to adequately pursue her administrative remedies can be "conclusively established" from the complaint, the plaintiff's claim remains viable. *See id.*; *see also Sleep Tight Diagnostic Ctr., LLC v. Aetna Inc.*, 399 F. Supp. 3d 241, 257 (D.N.J. 2019) (stating that "[a p]laintiff's failure to plead that it complied with the applicable administrative review procedures under the [ERISA p]lans [did] not warrant dismissal, as it is [the d]efendants' burden to show lack of exhaustion").

In terms of the Plan's internal appeals process, the SPD provides that:

> Generally, you are required to complete all appeal processes of the Plan before being able to obtain External Review or bring an action in litigation. *However*, if Aetna, or the Plan or its designee, does not strictly adhere to all claim determination and appeal requirements under applicable federal law, you are considered to have exhausted the Plan's appeal requirements ("Deemed Exhaustion") and may proceed with External Review or may pursue any available remedies under §502(a) of ERISA or under state law, as applicable.

(SAC, Ex. C, SPD at 65) (emphasis added.) The SPD also states that the claimant:

> …may file an appeal in writing to Aetna at the address provided in this booklet, or, if your appeal is of an urgent nature, you may call Aetna's Member Services Unit at the toll-free phone number on the back of your I.D. card... Your request should include the group name (that is, your employer), your name, member ID, or other identifying information shown on the front of the Explanation of Benefits form, and any other comments, documents, records and other information you would like to have considered, whether or not submitted in connection with the initial claim.

(*Id.*) Further, according to the SPD, a participant has "180 days following receipt of an Adverse Benefit Determination to appeal the determination to Aetna." (*Id.* at 65.) If the participant is "dissatisfied with a pre-service or post-service appeal decision, [they] may file a second level appeal with Aetna within 60 days of receipt of the level one appeal decision." (*Id.* at 66.) Lastly, the SPD provides that if the participant "do[es] not agree with the Final Internal Adverse Benefit

7

Determination on review, [they] have the right to bring a civil action under Section 502(a) of ERISA, if applicable." (*Id.*)

Defendants state that because "ALIC issued the EOB summarizing the purported "underpayment" on December 24, 2019," Plaintiff "was required to file a first-level appeal by June 24, 2020, and, from there, a second-level appeal within 60 days of the first-level determination." (ECF No. 35-1 at 17.) Defendants argue that the SAC does not allege that Plaintiff followed this process. Specifically, Defendants maintain that the letter dated January 30, 2020, that Plaintiff sent via email "is clearly not a first-level administrative appeal submitted to ALIC at ALIC's designated address, as the Plan requires." (*Id.* at 18.) Defendants contend that Plaintiff's second and third letters, dated January 15, 2021, and July 28, 2021, are also not administrative appeals to ALIC taken in accordance with the SPD, and "both letters are dated well beyond the June 24, 2020 deadline to submit a first-level appeal." (*Id.*)

Plaintiff's opposition does not address Defendants' argument that its January 30, 2020 letter was not submitted to ALIC at ALIC's designated address, as the Plan requires. Instead, Plaintiff contends (and Defendants do not dispute) that at the time its initial appeal went out, Plaintiff was not in receipt of the SPD and that Defendants' December 24, 2019 EOB "failed to include the appropriate and necessary information regarding their appeal [procedures] on time limitation." (ECF No. 36 at 14.) As a result, Plaintiff argues that "despite not having the SPD and the Defendant's EOB running afoul of the ERISA requirements set forth in 29 C.F.R. § 2560-503-1(b),[2] the letter complied with the appeals process prescribed by the Plan." (*Id.*)

---

[2] ERISA lays out various requirements that must be met with regard to the "filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations (hereinafter collectively referred to as claims procedures)." 29 C.F.R. § 2560-503-1(b). If reasonable claims procedures and not established and maintained, as defined in the applicable provisions of 29 C.F.R. § 2560-503-1, a "claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section

Here, Defendants fail to meet their burden of demonstrating that ERISA's exhaustion requirement warrants the dismissal of Plaintiff's claims. As stated, *supra,* a court reviewing a Rule 12(b)(6) motion may only consider the facts alleged in the pleadings, the documents attached as exhibits, and matters of judicial notice. The Court cannot conclusively establish from the SAC and exhibits attached thereto whether Plaintiff exhausted his administrative remedies or should be deemed to have exhausted based on the Plan's failure to provide a reasonable claims procedure or whether further pursuit of those remedies would be futile. *See Deblasio v. Cent. Metals, Inc.*, No. 1:13-CV-5282 NLH/AMD, 2014 WL 2919557, at *4 (D.N.J. June 27, 2014). As a result, the Court cannot dismiss Plaintiff's ERISA claim on the basis that it failed to plead facts sufficient to establish its exhaustion of administrative remedies.

### B. Claim for Benefits Under § 502(a)(1)(B) of ERISA

Plaintiff alleges that it is owed—and did not receive—$117,547.26 in additional benefits owed to Patient for the emergency services provided by MNA per the language of the Plan's coverage for treatment of an "Emergency medical condition" performed by out-of-network

---

502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." *Id*. at § 2560-503-1(l)(l). Those requirements are as follows:

> (g) Manner and content of notification of benefit determination.
>
> (1) Except as provided in paragraph (g)(2) of this section, the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b–1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant—
>
>> (i) The specific reason or reasons for the adverse determination;
>>
>> (ii) Reference to the specific plan provisions on which the determination is based;
>>
>> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>>
>> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

29 C.F.R. § 2560-503-1(g)(1)(i)-(iv).

providers. (ECF No. 36 at 4-10.) Defendants argue that Plaintiffs have failed to state a 502(a)(1)(B) claim because the SAC fails to allege that the Plan's definition of "Reasonable Charge" obligates the Plan to pay the benefits Plaintiff demands. (ECF No. 35-1 at 8-15.) The Court agrees.

Section 502(a)(1) provides that a "participant or beneficiary" of an ERISA plan may bring a civil action "to recover benefits due to h[er] under the terms of h[er] plan, to enforce h[er] rights under the terms of the plan, or to clarify h[er] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To state a claim for relief under § 502(a)(1)(B), a plaintiff "must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006). In order to plead sufficient facts to state a claim for relief, the plaintiff must identify a specific provision of the plan for which a court can infer this legally enforceable right. *See, e.g., Metro. Neurosurgery v. Aetna Life Ins. Co.*, No. 22-0083, 2023 U.S. Dist. LEXIS 143150, 2023 WL 5274611, at *4 (D.N.J. Aug. 16, 2023); *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4600, 2018 U.S. Dist. LEXIS 47181, 2018 WL 1420496, at *10 (D.N.J. Mar. 22, 2018); *Gotham City Orthopedics, LLC v. Cigna Health & Life Ins. Co.*, No. 21-1703, 2022 U.S. Dist. LEXIS 105297, 2022 WL 2116864, at *2 (D.N.J. June 13, 2022); *Univ. Spine Ctr. v. Edward Don & Co., LLC*, No. 22-3389, 2023 U.S. Dist. LEXIS 130742, 2023 WL 4841885, at *6 (D.N.J. July 28, 2023). A vague pleading that benefits are due is not sufficient. *Emami v. Cmty. Ins. Co.*, No. 19-21061, 2021 U.S. Dist. LEXIS 173132, 2021 WL 4150254, at *5 (D.N.J. Sept. 13, 2021); *Atl. Plastic & Hand Surgery, PA*, 2018 U.S. Dist. LEXIS 47181, 2018 WL 1420496, at *10. In addition, "several . . . decisions from this District have granted motions to dismiss in instances where a plaintiff has failed to tie his or her allegations of ERISA violations

to specific provisions of an applicable plan." *K.S. v. Thales USA, Inc.*, No. 17-7489, 2019 U.S. Dist. LEXIS 71389, 2019 WL 1895064, at *6 (D.N.J. Apr. 29, 2019).

In the SAC, Plaintiff points to the explanation of "Reasonable Charge" in the SPD to demonstrate that the Plan supports its claim for reimbursement. (*See* SAC ¶¶ 24, 25.) The SPD provides:

> Only that part of a charge which is reasonable is covered. The reasonable charge for a service or supply is the lowest of:
> - The provider's usual charge for furnishing it[;]The charge the Claims Administrator determines to be appropriate, based on factors such as the cost of providing the same or a similar service or supply and the manner in which charges for the service or supply are made[;]
> - The charge the Claims Administrator determines to be the prevailing charge level made for it in the geographic area where it is furnished.

(SAC, Ex. C, SPD at 114-115.) Additionally, the SPD provides that in determining the reasonable charge of a service or supply that is "unusual," "not often provided in the area," and "provided by only a small number of providers in the area," "[t]he claims administrator *may* take into account" (1) the complexity; (2) the degree of skill needed; (3) the provider's specialty; (4) the range of services or supplies provided by the facility; and (5) the prevailing charge in other areas. (*Id*. at 115) (emphasis added.)

The SAC lacks the allegations necessary to set forth an ERISA claim. Specifically, the SAC does not point to any Plan provision from which the Court can infer that Plaintiff was entitled to the amount of reimbursement demanded for the out-of-network emergency medical services provided to Patient. First, while Plaintiff alleges that additional payment is warranted based on the alleged complexity of the Patient's surgery and Dr. Yao's experience and credentials (s*ee* SAC ¶¶ 32, 37, 47; *id*., Ex. L), these factors are relevant only if the service is unusual, not often provided in the area, or provided by only a small number of providers in the area. (*See* SAC, Ex. C, SPD at 115.) The SAC does not contain any facts to support the conclusion that Patient's back surgery

11

meets any of these criteria. Thus, while the Claims Administrator, here ALIC, *may* consider the complexity of the service and the provider's credentials, it is not obligated to do so.

Next, Plaintiff argues that the Optum fee schedule in New Jersey for each of the CPT codes in question dated September 22, 2023, attached to the SAC, demonstrates what each CPT code should have been reimbursed pursuant to the "Reasonable Charge." (*See* SAC ¶¶ 31, 36, 41.) However, Optum's fee schedule does not trump the Plan, which vests ALIC with discretion over which payment methodology to apply. (*See* SAC, Ex. C, SPD at 97) ("We and the Claims Administrator have sole and exclusive discretion to …• Interpret Benefits under the Plan • Interpret the other terms, conditions, limitations, and exclusions of the Plan, including this SPD and any Riders and Amendments • Make factual determinations related to the Plan and its Benefits …") Therefore, ALIC could, in its discretion, look at the Optum fee schedule to calculate payment benefits, but nothing in the SPD requires it to do so. Further, ALIC can look at other industries' baselines in calculating out-of-network benefits, including the federal Medicare rates, which are typically less than a provider's billed charge but have nonetheless been upheld as reasonable bases for calculating out-of-network payments. *See, e.g., Shah v. Horizon Blue Cross Blue Shield of New Jersey*, 2018 U.S. Dist. LEXIS at *6 (D.N.J. Feb. 9, 2018)*; Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of New Jersey*, 2018 U.S. Dist. LEXIS at *7 (D.N.J. Mar. 6, 2018). Therefore, while Optum pricing may be Plaintiff's preferred methodology, nothing in the SPD requires the application of that methodology, nor does the SPD prevent ALIC from applying a different baseline, such as Medicare rates. Consequently, Plaintiff has, for the second time, failed to make a plausible connection between its demand for benefits and the Plan's terms. , and as such, Plaintiff's § 502(a)(1)(B) claim is dismissed with prejudice.

In its Opinion and Order dated August 16, 2023 (ECF Nos. 23, 24), this Court granted Plaintiff leave to cure the Amended Complaint's deficiencies via an amended pleading. Plaintiff's continued failure to tie the Plan's terms to the benefits sought indicates an inability to do so. Consequently, the Court concludes that any attempted amendment would be futile. As a result, Plaintiff's claims will be dismissed with prejudice.

IV.  **CONCLUSION**

For the foregoing reasons, the Defendants' motion to dismiss (ECF No. 35) is **GRANTED,** and Plaintiff's Second Amended Complaint (ECF No. 27) is **DISMISSED with prejudice**. An appropriate Form of Order accompanies this Opinion.

**DATED:** September 30, 2024

_____
HONORABLE JULIEN XAVIER NEALS
United States District Judge